McMILLIN, P. J., for the Court:
¶ 1. The matter before the Court is an appeal from a decision of the chancellor rendered in the Chancery Court of Calhoun County. The litigation involved a dispute over a property owner’s right of ingress and egress across an adjoining parcel of real property. The chancellor held that a private easement had been established by prescription, but ordered that the owner of the subservient estate could re-route the easement to better accommodate the use of his land. The party seeking access has appealed that decision, claiming that the access was a part of the county’s public road system and, thus, beyond the chancellor’s authority to move. We agree and, therefore, reverse and render judgment in favor of the appellant.
I.
Facts
¶2. The appellant, Ann May Enterprises, Inc. (hereafter “May Enterprises”) is the present owner of a tract of real property in Calhoun County that is not touched by either of two paved public roads that presently traverse the area. However, the property is crossed by an unpaved road commonly known in the area as Winters Road, which connects the two paved roads. There was evidence that Winters Road was formally proclaimed as a public road by the board of supervisors by a minute entry made in 1943. Winters Road had two timber bridges needed to cross low-lying areas, and the proof is uncontradieted that both bridges became unserviceable quite a few years ago and were not repaired or rebuilt by the county. As a result, Winters Road became unusable as a means to cross over from one of the more frequently traveled roads in the region to the other.
¶3. The property owned by May Enterprises has never been occupied on a permanent basis; however, the owners always used the Winters Road route to gain access to the *1129 property when the need arose. There was evidence that the May Enterprises tract was, in the past, put to some agricultural use. For some time, the property has contained a recreational cabin used with some frequency by representatives of the corporate owner. The only access from the paved public road to the cabin and the remaining property is by Winters Road. This access is not hindered by the fact that the bridges are impassable since both bridges are located farther in on the road. The part of Winters Road used to access the May Enterprises property runs across a tract of land owned by the appellee, James Capíes.
¶4. In 1994, Capíes erected a barrier across Winters Road that prevented anyone gaining access to the May Enterprises tract. May Enterprises then commenced this litigation, claiming that Winters Road was a county road, thus making it unlawful for a private individual to bar use of the road. May Enterprises sought an injunction for the removal of the barrier. Capíes filed a counterclaim, alleging that representatives of May Enterprises had committed numerous trespasses by their prior use of Winters Road to gain access to the May Enterprises tract. Capíes sought an injunction prohibiting any further acts of trespass.
¶5. The chancellor found as a matter of fact that Winters Road had once been a public road. However, he concluded that, although there was no formal entry in the supervisors’ minutes closing the road, there had been a de facto abandonment through non-use by the public and a failure by the board of supervisors to keep the road in repair for a period well in excess of ten years. The chancellor nevertheless found as a matter of fact that agents of May Enterprises and the predecessors in title to May Enterprises had continued to use the roadway as access to the May Enterprises tract since the road had ceased to be a public way and that such private use had continued for the requisite number of years to establish a private easement for ingress and egress by prescription.
¶ 6. There was evidence that Capíes had established a residence on his property that was extremely close to the existing path of Winters Road and that the use of the road by those going on the May Enterprises tract was disturbing to Capíes in the quiet and peaceable enjoyment of his property. The chancellor concluded that, though May Enterprises was entitled to a prescriptive easement for ingress and egress over the Capíes property, he would, in the exercise of the inherent equitable powers of the chancellor, require that the route of the easement be redirected to better accommodate Capíes in the use of his residence. He, therefore, ordered that Capíes be permitted to decide on an alternate route for the easement. The chancellor directed that the new route, as laid out by Capíes, be surveyed at the expense of May Enterprises. The chancellor further held that May Enterprises would be liable for attorney’s fees in an amount to be subsequently determined, apparently based on the premise that May Enterprises had wrongfully sought to sue out a writ of injunction to enforce rights belonging to the public in general when those rights no longer existed.
¶ 7. It was at that point that May Enterprises filed its notice of appeal and the matter was brought before this Court for resolution.
II.
.A Preliminary Question of Appellate Jurisdiction
¶ 8. Capíes raises the issue that this Court lacks jurisdiction since the order appealed from is clearly interlocutory in nature. Capíes points out that the new route of the easement has not been determined, the survey has not been conducted, nor has the necessary inquiry been conducted to set attorney’s fees. While this point may have technical merit, we observe that the chancellor, in making his ruling at the conclusion of the hearing, stated as follows:
I believe I’ve covered everything. Anybody aggrieved with this opinion, has the right to perfect an appeal to the Mississippi Supreme Court by following the Appellate Court Rules and the statutes applicable thereto.
*1130 ¶ 9. This pronouncement does not fully conform to the provisions of Mississippi Rule of Civil Procedure 54(b) concerning certification of one or more issues as having been finally adjudicated. Neither did May Enterprises seek authority for an interlocutory appeal under Mississippi Rule of Appellate Procedure 5. Nevertheless, because (a) this case has been fully tried, (b) the fundamental issues upon which the case ought to turn have been decided at the trial level, and (c) the parties have fully briefed and argued the merits of the issues to this Court, we have decided to exercise our authority under Mississippi Rule of Appellate Procedure 2(c) to suspend the rules and reach the merits of this technically interlocutory appeal. See Keyes v. State, 708 So.2d 540, 542 (Miss. 1998).
III.
Abandonment of a Public Road
¶ 10. There has been no formal act by the Calhoun County Board of Supervisors to abandon the public’s interest in Winters Road as a public right of way. In 1986, the Mississippi Legislature adopted a statute setting out certain requirements necessary to close a road. Miss.Code Ann. § 65-7-121 (Supp.1998). May Enterprises argues that lack of evidence of compliance with this statute compels a finding that the road still maintains its public character. Capíes, on the other hand, argues that the public nature of the roadway ended long before 1986, so that this statute has no application. According to Capíes, the matter of whether the road has been abandoned as a public way must be answered under the' law as it existed prior to 1986. Based on the chancellor’s findings that seem to indicate that an abandonment occurred prior to 1986, we agree with Capíes on this point.
¶ 11. Though we are cited to no predecessor statute to Section 65-7-121 that defined the procedure for formally closing a public road, case law decided prior to 1986 suggests that such a power existed. In Berry v. Board of Supervisors, the Mississippi Supreme Court acknowledged the county supervisors’ authority to close public roads under the broad powers found in section 170 of the Mississippi Constitution and the then-existing version of the present Section 19-3-41 of the Mississippi Code of 1972; though neither the Constitution nor the applicable statute define the necessary procedure. Berry v. Board of Supervisors, 156 Miss. 629, 126 So. 405 (1930). Other decisions indicate that it was an accepted practice for the supervisors to close roads by formal minute entry. See, e.g., Barrett v. Pilgrim, 317 So.2d 382, 383 (Miss.1975); Picayune Wood Prods. Co. v. Alexander Mfg. Co., 227 Miss. 593, 603, 86 So.2d 480, 483 (1956); Noxubee County v. Long, 141 Miss. 72, 82, 106 So. 83, 85 (1925).
¶ 12. The finding of an absence of some effort at formal closure in the supervisors’ minutes does not end our inquiry, however. The Mississippi Supreme Court has long recognized that there may be, even in the absence of a formal act of closure, a de facto abandonment of the public’s interest in a particular roadway. Medina v. State ex rel. A.F. Summer, Attorney General, 354 So.2d 779, 783 (Miss.1977); Picayune Wood Prods. Co., 227 Miss. at 603, 86 So.2d at 483. The court, in determining whether an abandonment has occurred, has invoked considerations relating to matters of adverse possession and claims of prescriptive rights and has said that an abandonment would be found in circumstances where “the public’s exclusion from a public road is so complete and continuous that, were adverse possession being claimed against a record title holder the claim would be honored....” McNeely v. Jacks, 526 So.2d 541, 543 (Miss.1988). Thus, according to the case authority, the evidence must show that the disuse of the road has been complete and that it has continued uninterrupted by any occasion of public use for a continuous period of at least ten years. Medina, 354 So.2d at 783; Picayune Wood Prods. Co., 227 Miss. at 604, 86 So.2d at 484.
¶ 13. The McNeely v. Jacks decision makes the point that there is no minimum number of members of the public, nor any particular volume of public traffic, that must be shown in order to defeat a claim of abandonment. The McNeely court observed that use of a road by anyone other than the abutting prop *1131 erty owner when that use is under a claim of right said to be vested in the general public is, by definition, an instance of public use. “If a public road runs through the property of one and deadends on the property of another, and for ten years the latter (and persons acting on his behalf and with his permission) are the only ones to use the road, no abandonment occurs.” McNeely v. Jacks, 526 So.2d at 545 (emphasis supplied); see also Barrett v. Pilgrim, 317 So.2d at 383 (holding that intermittent use of a road by limited members of the public as a lovers’ lane and for concealing caches of whiskey was sufficient to maintain the road’s public character).
¶ 14. In this ease, the chancellor found as a matter of fact that agents of May Enterprises and May Enterprises’ predecessors in title had continuously used Winters Road to gain access to the property. In the chancellor’s view, this use was sufficient to constitute the kind of activity that, if continued uninterrupted for ten years, would ripen into an easement by prescription. The chancellor then found that this use had, in fact, continued for ten years or more after the road had lost its public character. Logic requires a conclusion, therefore, that there was never a ten-year interruption in the use of the road by May Enterprises agents and its predecessors in title. That finding of fact is not contested by Capíes. This finding makes it extremely difficult for this Court to see how the facts of this case can be distinguished from the holding in McNeely v. Jacks.
¶ 15. In the absence of a formal act of closure by the supervisors, there is no logical way by which those using a public road for access to their property can be charged with notice that the supervisors have become content to let the roadway fall into disuse so that, thereafter, the continued use becomes adverse to the abutting landowner rather than in the exercise of a previously-existing right shared with other members of the public to use the road as a public way. Certainly, those using the public roads of this State for lawful purposes, especially in the less-populated regions, ought not to be expected to correctly gauge the present attitude of the governmental authorities concerning a particular road by the then-existing state of repair of the roadway. Lack of maintenance and upkeep of a particular road for extended periods may as easily be charged to lack of adequate governmental resources as to an unstated intention by the supervisors to abandon the road forever.
¶ 16. Because the use of this road was uninterrupted and because the overwhelming evidence suggests that'those persons using the road to gain access to the May Enterprises tract were doing so in reliance on the public character of the road and were not doing so under any permissive right granted by Capíes, we are compelled to conclude that, rather than having created a private easement by prescription, this use has necessarily continued the public character of the roadway under the McNeely v. Jacks decision. In so holding, we acknowledge that the county, having been made an additional party to this proceeding at the trial level (though it is not a party to the appeal), pled in its answer that it had abandoned any claim to the road as a public way. That conclusory statement, however, cannot be binding on the parties. The county, as 'a public governmental body, can only speak and act through its official minutes. It is undisputed that there is no formal act of closure reflected in the supervisors’ minutes. Whether a road has lost its public character through long periods of neglect by the responsible governmental authority and by lack of use by members of the public is a question of fact that can only be answered in an appropriate judicial proceeding, and is not one on which the supervisors can speak definitively in the course of litigation. Even were it shown beyond dispute that the county had not performed any maintenance on the road for more than ten years and had no intention of ever doing so again, that is not enough to demonstrate unequivocally a de facto abandonment. Lack of upkeep is certainly a factor in a determination of abandonment, but the public may continue to use a road that grows more and more impassable through the neglect of the maintaining authority. That use, though progressively more difficult, is enough to prevent a finding of de facto abandonment so long as it is shown to be continuous in nature.
*1132 ¶ 17. The chancellor’s decision that the largely undisputed facts of this case could support a finding of abandonment of a public road is, in the opinion of this Court, an error of law that requires us to intervene. Because the uncontroverted facts compel a finding that the public character of that part of Winters Road used by the agents of May Enterprises and its predecessors in title has not been lost by non-use sufficient to establish abandonment, we reverse and render the chancellor’s decision. We hold that Winters Road as shown to have existed by the proof must be recognized as an existing public way and, as such, it was not within the chancellor’s authority to re-route its direction or deny agents of May Enterprises — or any other member of the public, for that matter— the right to use the roadway for entrance to the May Enterprise tract.
¶ 18. Since there is to be no re-routing of the access road over Caples’s property, the part of the chancellor’s decision ordering May Enterprises to pay for the costs of a survey is now moot and is reversed and rendered. Also, because we have determined that May Enterprises should have prevailed on the merits at trial, the chancellor’s decision to award attorney’s fees to Capíes was error and we reverse and render on the issue of attorney’s fees.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF CALHOUN COUNTY IS REVERSED AND JUDGMENT IS RENDERED IN FAVOR OF THE APPELLANT, ANN MAY ENTERPRISES, INC., DECLARING THAT PART OF WINTERS ROAD NECESSARY TO GAIN ACCESS TO THE MAY ENTERPRISES, INC. TRACT TO BE A PUBLIC ROAD AND ENJOINING THE APPELLEE, JAMES CAPLES, FROM ANY EFFORT TO DENY SUCH USE OF WINTERS ROAD AS IS CONSISTENT WITH THE NORMAL AND CUSTOMARY USE OF A COUNTY PUBLIC ROAD. THE PROVISIONS OF THE JUDGMENT ORDERING THE APPELLANT TO PAY THE COSTS OF SURVEYING AN ALTERNATE ROUTE AND THE AWARD OF ATTORNEY’S FEES AGAINST THE APPELLANT ARE ALSO REVERSED AND RENDERED. THE COSTS OF THIS APPEAL ARE TAXED TO THE APPEL-LEE, JAMES CAPLES.
BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE AND SOUTHWICK, JJ., CONCUR.