791 So.2d 262 (2001)
MISSISSIPPI POWER COMPANY, Appellant
v.
Coy FAIRCHILD, Appellee.
No. 1998-CC-01759-COA.
Court of Appeals of Mississippi.
February 20, 2001.
Rehearing Denied May 15, 2001.
Certiorari Denied July 26, 2001.
*263 Paul Richard Lambert, G. Martin Warren Jr., Gulfport, for Appellant.
David Shoemake, Collins, for Appellee.
Before McMILLIN, C.J., PAYNE and LEE, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. Mississippi Power Company (MPC) filed a petition before the Covington County Board of Supervisors (Board) asking that the Board grant MPC a private way across the property of Coy Fairchild. A hearing was held and the Board denied MPC's request. MPC filed a Bill of Exceptions and supplement thereto in the Circuit Court of Covington County. After a hearing on the matter, the circuit court affirmed the decision of the Board of Supervisors, and MPC perfected this appeal. We find that the lower court erred in its determination, and we reverse and remand for further proceedings.

FACTS
¶ 2. MPC owns certain landlocked real property in Covington County, Mississippi. See appendix A for plat showing division of property and roadways 1, 2 and 3. This property is bordered on the west and south by property belonging to Coy Fairchild. MPC's property is bordered on the north and east by Herbert Pickering's property. MPC's property is divided into three major sections due to the course of the Okatoma Creek which crosses the entire width of the property. The northwest portion contains 5.85 acres, the northeast/southeast portion contains 10.46 acres, and the southwest portion contains 16.68 acres. The southwest portion is the property involved in this lawsuit.
¶ 3. MPC contends that the only reasonable access to the larger portion of its property is through Fairchild's property. If MPC acquires access to the northeast/southeast portion through Pickering's property, MPC would have to build a private bridge across the creek for vehicular access to the larger portion. MPC claims that access across Pickering's property would be 1,361.89 feet through an overgrown trail [1], and that construction of a bridge would create environmental concerns and cost in excess of $250,000. Access through Fairchild's property, which is the method used for over fifty years, is only 879.26 feet along the south portion of an existing old dirt road [2a] and old woods road [3] previously used for logging.
¶ 4. The existing old dirt road [2a] continues northeasterly [2b] to the Okatoma Creek and was a public road when MPC acquired the property in 1930. Mr. Warren, attorney for MPC, stated to the Board that the old dirt road [2] ran to a bridge on MPC property. The bridge crossing the creek washed out sometime after 1930 and was never rebuilt, so the road [2] ceased to be used by the public. When asked by the circuit court judge, Warren stated that they have found no order entered by the Board of Supervisors closing the dirt road to public use.
¶ 5. MPC claims that it continually accessed its property by the dirt road [2a] and the old woods road [3] across Fairchild's *264 property from 1930 until the early 1990's when Fairchild installed a gate where the dirt road intersects a public gravel road. MPC has a key to the gate and still uses the dirt road and woods road to access its property, with Fairchild's permission. MPC stated that it has attempted to purchase the private way from Fairchild on numerous occasions. MPC has had appraisals done and stated it is willing to pay Fairchild the fair market value as required by statute. See Miss.Code Ann. § 65-7-201. Fairchild claims he has offered to buy the property from MPC, but that is immaterial to the issue at hand.
¶ 6. An employee of MPC, Chip Speaker, testified that the dirt road [2b] continues northeasterly to Okatoma Creek where an old bridge used to be until it washed out sometime around 1930, but that MPC wants to own as a private way the route that turns off the old dirt road [2a] onto the woods road [3] across the Fairchild property. Upon questioning by Board members, Speaker said that the route turning onto the woods road [3] is the one MPC has always used to get to the land. A board member queried: "you had a route at one time, and you are trying to reestablish a route?" MPC's attorney indicated that although MPC has continuously used the route [2a and 3] they never had anything in writing from Fairchild allowing them access across his property. Therefore, they requested the Board of Supervisors to designate that route as a private way upon MPC's fulfilling the terms of the statute which gave the Board of Supervisors that authority.
¶ 7. It appears from the record and briefs that the old dirt road [2a and b], which continues northeasterly to Okatoma Creek, is still being used by a canoe rental business to access the Okatoma Creek, but now with Fairchild's permission, as it was being used for such purposes before the gate was installed. The MPC witness, Donald Walker, who prepared the accessibility analysis, stated in his deposition that he recommended MPC access its property from either of the two easements surveyed (both on Fairchild's property), one being from the dirt road [2a and b] that extends to the southeast corner of MPC's property, which would require MPC to traverse Mooney Branch, and the other from currently used route along the old dirt road [2a] and old woods road [3]. Walker also testified that access from the north through Pickering's property would require a bridge to be built across Okatoma Creek. Aside from the expense, Walker stated that there are environmental concerns to be addressed and that the property is in a flood plain area. The Circuit Court of Covington County found that MPC failed to show that the necessity is real and not merely a matter of convenience. The Board did not state which, if any, of the three roads would meet the statutory requirement of necessity, as opposed to convenience, but one is left with the impression that the Board of Supervisors found that neither of the roads across Fairchild's property would satisfy the "necessity" requirement.

STANDARD OF REVIEW
¶ 8. The standard for reviewing decisions of a Board of Supervisors is as follows:
The standard of review of an order of a Board of Supervisors is the same standard which applies in appeals from the decisions of administrative agencies. Barnes v. Board of Sup'rs, DeSoto County, 553 So.2d 508, 511 (Miss.1989). "The decision of an administrative agency is not to be disturbed unless the agency order was unsupported by substantial evidence; was arbitrary or capricious; was beyond the agency's scope or powers; or violated the constitutional *265 or statutory rights of the aggrieved party." Board of Law Enforcement Officers Standards & Training v. Butler, 672 So.2d 1196, 1199 (Miss.1996).
Ganier v. Mansour, 766 So.2d 3 (¶ 12) (Miss.Ct.App.2000).
The Board's task was to review and decide whether the owner of a landlocked tract of land, without a legally established means of ingress and egress, was entitled to an easement over neighboring land. The Board had to accomplish this task while keeping in mind the competing interests of [persons] who own land surrounding the land-locked tract. Our function as a reviewing Court is not to judge how to balance the competing rights; rather, our duty is to determine whether the Board's decision should stand under the prevailing standard of review.
Id. at (¶ 11).

APPELLANT'S STATEMENT OF ISSUES
¶ 9. MPC assigned the following errors in its appeal:
I. The Decision by the Covington County Board of Supervisors Denying Mississippi Power Company a Private Way is Not Supported by Substantial Evidence.
II. The Decision by the Covington County Board of Supervisors Denying Mississippi Power Company a Private Way is Arbitrary and Capricious.
III. The Decision by the Covington County Board of Supervisors Denying Mississippi Power Company a Private Way Violates the Statutory and Constitutional Rights of Mississippi Power Company to the Full Enjoyment of its Property, Pursuant to Mississippi Constitution Article 4, Section 110, and Mississippi Code Annotated Section 65-7-201 (1972).

DISCUSSION OF THE LAW
¶ 10. Article 4, Section 110 of the Mississippi Constitution states:
The legislature may provide, by general law, for condemning rights of way for private roads, where necessary for ingress and egress by the party applying, on due compensation being first made to the owner of the property; but such rights of way shall not be provided for in incorporated cities and towns.
Miss.Code Ann. § 65-7-201 states in part:
When any person shall desire to have a private road laid out through the land of another, when necessary for ingress and egress, he shall apply by petition, stating the facts and reasons, to the board of supervisors of the county, which shall... determine the reasonableness of the application.
MPC claims that the absence of any reasons in the order of the Board of Supervisors denying its petition for a private way is a clear indication that the decision was not based on substantial evidence and not based on any credible evidence. Therefore, MPC claims, it necessarily follows that the decision is arbitrary and capricious. MPC further claims that the Board's decision denying the private way violates MPC's statutory and constitutional rights to the full enjoyment of its property.

1. NECESSITY
¶ 11. In a case concerning an easement by necessity, the Mississippi Supreme Court stated:
The question presented is novel and does not afford a just solution by strict adherence to the law. This Court has heretofore upheld ways of necessity from isolated parcels of land to the public roads as being essential to the owner's enjoyment of his property. Quin v. *266 Sabine, 183 Miss. 375, 183 So. 701 (1938); Board of Supervisors of Lamar County v. Elliott, 107 Miss. 841, 66 So. 203 (1914); and Pleas v. Thomas, 75 Miss. 495, 22 So. 820 (1897). Indeed, our legislature in obedience to the dictates of Article 4, Section 110 of the Mississippi Constitution (1890) by the enactment of Mississippi Code 1942 Annotated section 8419 (1956), [§ 65-7-201 MCA 1972], made provision for roadways to be laid out upon the lands of another when necessary for ingress and egress, thus acknowledging, as did the framers of the constitution, and as do the courts, that an owner is entitled to the full enjoyment of his property where feasible, especially if the enjoyment of the right would make useful and valuable that which otherwise would be useless and valueless.
Warwick v. Pearl River Val. Water Supply Dist., 246 So.2d 525, 528 (Miss.1971). The principle would be the same in the case at handwithout access across Fairchild's property, the southern portion of land would be useless and of little value to MPC. To borrow language from a Connecticut court:
It may be ... that while access to the property is not absolutely cutoff, the circumstances of the case are such that the means of access available would not afford the landowner any real beneficial enjoyment of his property. Such a situation would arise when the expense of making the means of access available would exceed the entire value of the property to which access was sought. Such a means of access would be no better than none at all and there would seem to be equal reason for presuming a grant under such circumstances as in the case where there was no access.... [T]he weight of authority supports what seems to us to be the better rule that the necessity need only be a reasonable one.
Marshall v. Martin, 107 Conn. 32, 139 A. 348, 350 (1927).
¶ 12. The section of MPC's property in question is triangular in shape, bounded on one side by Okatoma Creek and on the other two sides by Fairchild's property. The Mississippi Supreme Court stated in Rotenberry v. Renfro, 214 So.2d 275, 278 (Miss.1968), "[t]here can be no doubt that petitioner's property is landlocked and that it is unreasonable to expect the petitioner to build a private bridge across the Tallahatchie River or the Yocona Drainage Channel in order to reach his land." MPC cites Alpaugh v. Moore, 568 So.2d 291 (Miss.1990), which says a landowner is not required to explore building a bridge to get to the property due to its inherent unreasonableness. Therefore, any reference to availability to access through the Pickering property to the Northeast, which would require crossing Okatoma Creek, would be inherently unreasonable. This Court recently stated in Ganier:
The common thread in Alpaugh, Rotenberry, and Reid [v. Horne, 208 So.2d 780], is that the respective boards determined that the petitioners' land was accessible by only one route; therefore, the petitioners in those cases proved their requested easements were reasonably necessary and not for mere convenience.
Ganier, 766 So.2d at (¶ 16). In the present case, no other reasonable alternative for access to MPC's southwest section of property was set forth; thus, the requested private way is reasonably necessary and not for mere convenience.
¶ 13. Fairchild claims that MPC has access to its property by the navigable waters of Okatoma Creek; however, Quinn v. Holly, 244 Miss. 808, 146 So.2d 357, 359 (1962), states that the "requirement *267 ... that the proposed private way be `necessary' only means reasonably necessary and practical, and not absolutely necessary." (emphasis added). If MPC were to gain access via the Pickering property on the northeast [1], the expense of building a bridge across Okatoma Creek to the land in question, estimated at $250,000, would be so cost prohibitive as to be unreasonable and no doubt exceed the entire value of the 16.68 acres involved.
¶ 14. Another indicia of the reasonableness of access across Fairchild's property is that MPC had been using that same route of access for over sixty years when Fairchild installed the gate blocking access. Additionally, MPC has continued to use that route [2a and 3] up to the present with Fairchild's permission, having been given a key by Fairchild.
¶ 15. Whitefort v. Homochitto Lumber Co., 130 Miss. 14, 93 So. 437 (1922) states:
[T]he petition must show on its face that there is no other land over which the company might secure a right of way, and must show effort to obtain such right of way from such other owner.... The statute does not contemplate granting one citizen or corporation a right of way through the property of another citizen or corporation as a matter of mere convenience or as a mere matter of saving expense. There must be real necessity before private property can be invaded by a citizen for private purposes, if that can be done at all. The right to the control and use of one's property is a sacred right, not to be lightly invaded or disturbed. When property may be taken from a citizen for any purpose by law, the method for doing so must be strictly pursued, and the party seeking to take the property of another must come squarely within the statute.
MPC argues that it was not required to attempt to gain access across any other route because Rotenberry says a petitioner must allege and show it is unable to obtain a reasonable right of way from all surrounding property owners. MPC claims there is no reasonable way of access other than across Fairchild's property because any other route would require building a bridge. MPC testified that it offered to pay Fairchild the fair value for the private way under the statute, thus coming within the statute.
¶ 16. This Court finds that the portion of land in question is bounded by no property owner other than Fairchild from whom MPC could seek access and, as stated, it would be unreasonable to require MPC to build a bridge across Okatoma Creek. Therefore, access to the southwest portion of MPC's property will necessarily be across Fairchild's property, from one point or another. The particular access will depend upon some additional information.

2. EASEMENT BY PRESCRIPTION
¶ 17. MPC claimed without dispute that it had been using the same route [2a and 3]across Fairchild's property since the bridge across Okatoma Creek washed out in 1930. MPC stated that Fairchild allowed this use, but did not state at what point Fairchild gave his permission. The Mississippi Supreme Court held in Sharp v. White, 749 So.2d 41 (Miss.1999), that despite continued use of a road by a landowner and her ancestor for over thirty years, she could not show that the use was hostile, adverse, and under a claim of right, thus failing to prove a prescriptive easement. That court reiterated its statement in Myers v. Blair, 611 So.2d 969, 971 (Miss.1992), that "use by express or implied permission or license, no matter how long continued, cannot ripen into an easement *268 by prescription since adverse use is lacking."
¶ 18. The Sharp court further pointed out that "whether a use is prescriptive or permissive is ordinarily a question of fact to be determined by the chancellor." Sharp, 749 So.2d at 43. However, neither the Board nor the lower court explored this issue despite the Board's question to MPC, "you had a route at one time, and you are trying to re-establish a route?" As stated in Sharp, the chancery court, and not the board of supervisors, is the proper forum in which to determine whether or not the route currently used by MPC has become theirs by right of prescription. Therefore, we make no determination as to ownership of this route by right of prescription.

3. STATUS OF OLD PUBLIC ROAD
¶ 19. Before the Board of Supervisors can consider the need for a private way, it needs to consider the status of the old public road [2a and b] leading from the current public road to a very small piece of MPC property bounded by Mooney Branch and Okatoma Creek. This road [2a and b] was undisputedly a public road when MPC acquired its property. After the bridge across Okatoma Creek washed out in the 1930's, this road ceased to be used as a main road since the bridge was not rebuilt. Upon questioning by the Board, however, MPC stated that it did not find any indication in the Board's minutes that the road had been abandoned by the county.
¶ 20. In a recent Mississippi Court of Appeals case, this Court stated that in decisions prior to the 1986 legislation concerning the requirements necessary to close a road, the accepted practice was for the supervisors to close roads by formal minute entry. Ann May Enterprises, Inc. v. Caples, 724 So.2d 1127, 1130 (Miss.Ct. App.1998) (citing Berry v. Board of Supervisors, 156 Miss. 629, 126 So. 405 (1930); Noxubee County v. Long, 141 Miss. 72, 82, 106 So. 83, 85 (1925)). The Caples court held that although the county pled in its answer that it had abandoned any claim to the road as a public way, "the county can only speak and act through its official minutes.... Even were it shown ... that the county had not performed any maintenance on the road for more than ten years... that is not enough to demonstrate unequivocally a de facto abandonment." Caples, 724 at 1131 (Miss.App.1998).
¶ 21. The Caples court also cited McNeely v. Jacks, 526 So.2d 541, 543 (Miss.1988), which stated that:
an abandonment would be found in circumstances where "the public's exclusion from a public road is so complete and continuous that, were adverse possession being claimed against a record title holder the claim would be honored...." Thus, according to the case authority, the evidence must show that the disuse of the road has been complete and that it has continued uninterrupted by any occasion of public use for a continuous period of at least ten years.
Caples, 724 at 1130 (Miss.App.1998). The court further cited the point from McNeely that "there is no minimum number of members of the public, nor any particular volume of public traffic, that must be shown in order to defeat a claim of abandonment." Id. Even though the "public" use is substantially limited, the road retains its public character. Barrett v. Pilgrim, 317 So.2d 382, 383 (Miss.1975) (intermittent use of a road as a lovers' lane and for concealing caches of illegal whiskey held sufficient to maintain the road's public character).
¶ 22. All this having been said, the record in this case indicates that a canoe rental business used the dirt road [2a and *269 b] to access the Okatoma Creek for some time before Fairchild installed a gate, and has continued to use the road with Fairchild's permission. Fairchild also stated that other people used the road [2a and b] to the creek prior to his installing the gate. The Board and the Circuit Court did not fully consider nor determine the status of the dirt road [2a and b], or at least did not indicate such consideration in their orders.
¶ 23. If the dirt road [2a and b] has not been abandoned by the Board in its minutes or by continuous, uninterrupted disuse by the public for ten years, the question arises whether MPC has actual access to its property. If the road [2a and b] still retains its public nature, Fairchild has no authority to close the road to public use, including by MPC. MPC indicated that access via this route [2a and b] would entail crossing Mooney Branch "somehow." However, no testimony was given to indicate whether such access would be unreasonable. Mooney Branch must also be crossed over the requested route, just at a location further from Okatoma Creek. Therefore, more information is required to determine the appropriate remedy due MPC.
¶ 24. The Caples court stated that "whether a road has lost its public character through long periods of neglect by the responsible governmental authority and by lack of use by members of the public is a question of fact that can only be answered in an appropriate judicial proceeding, and is not one on which the supervisors can speak definitively in the course of litigation." Caples, 724 So.2d at 1131. This case is, therefore, remanded for further proceedings to determine the public status of the dirt road [2a and b], and whether access to MPC's land from the dirt road [2a and b] would be reasonable.

CONCLUSION
¶ 25. The decision of the Board of Supervisors was unsupported by substantial evidence. The Board gave no indication of what factors were considered in reaching its determination, thus giving no assistance to this Court to find anything but that the decision was arbitrary and capricious. Additionally, with no reasonable alternative of ingress and egress expressed for MPC in its decision, it appears the Board's decision does violate MPC's statutory and constitutional rights to the full enjoyment of its property. However, until proceedings are held to determine the status of the old public road [2a and b] and the reasonableness of access from that point, it is unclear whether MPC actually has a way of access so as to defeat a need for a "private way," thus we refrain from finding that the Board in fact violated MPC's rights. This case is reversed and remanded for further proceedings in accordance herewith.
¶ 26. THE JUDGMENT OF THE COVINGTON COUNTY CIRCUIT COURT IS REVERSED, THE ORDER OF THE BOARD OF SUPERVISORS FOR COVINGTON COUNTY IS REVERSED AND REMANDED TO THE BOARD OF SUPERVISORS FOR COVINGTON COUNTY FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS ARE ASSESSED AGAINST THE APPELLEE.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS and CHANDLER, JJ., concur.
IRVING, J., concurs in result only.