855 So.2d 459 (2003)
Earl Harvel SWAN, Jr. d/b/a Big Buck's B-B-Q Smokehouse, Inc., Appellant,
v.
Jack HILL d/b/a Kar Kleen, Appellee.
No. 2002-CA-00621-COA.
Court of Appeals of Mississippi.
July 15, 2003.
*461 Everette Verhine, Vicksburg, for appellant.
Kenneth M. Harper, Vicksburg, Wes W. Peters, Jackson, for appellee.
EN BANC.
CHANDLER, J., for the court.
¶ 1. The County Court of Warren County granted an easement to Jack Hill over land owned by Earl Harvel Swan, Jr. Swan appealed to the Chancery Court which affirmed the granting of an easement by the County Court. Aggrieved by the judgment, Swan appeals asserting the following issues:
I. WHETHER THE TRIAL COURT LACKED JURISDICTION IN AWARDING HILL AN INJUNCTION.
II. WHETHER THE TRIAL COURT ERRED IN GRANTING HILL AN EASEMENT BY NECESSITY.
II. WHETHER HILL ESTABLISHED THAT HE HAD AN EASEMENT BY PRESCRIPTION.
IV. WHETHER THE TRIAL COURT ERRED IN ORDERING AN OVERLY BROAD, VAGUE AND UNDULY BURDENSOME EASEMENT.
¶ 2. Finding that the trial court erred, we reverse and render.

PROCEDURAL HISTORY
¶ 3. On March 29, 2000, Hill filed a complaint with the County Court of Warren County requesting an easement across Swan's property. He also asked the court to grant him a temporary restraining order or preliminary injunction against Swan. On April 10, 2000, the county court ordered Swan to refrain from altering the use of Hill's land that impeded or conflicted with the prior historical use of the land.
¶ 4. At trial, on March 28 and 29, 2001, the court granted Hill an easement by necessity and the jury awarded $6,000 in compensatory damages and $4,000 in punitive damages. The chancery court affirmed the lower court's decision on appeal, and now Swan appeals to this Court.

FACTS
¶ 5. Swan, owner of "Big Buck's BBQ Smokehouse," and Hill, owner of "Kar Kleen" carwash, are neighboring landowners in Warren County. Swan's restaurant is located on the corner of Clay and Hope Street, facing Clay Street. Clay Street is a major thoroughfare off Interstate 20 entering downtown Vicksburg. Hope Street is a side street which accesses Hill's carwash, an apartment complex, and a few private homes.
¶ 6. Swan's property is located between Clay Street and Hill's carwash. Hill's property does not border Clay Street at any point but does border Hope Street. A bowling alley, Red Carpet Lanes, is located to the side of the carwash and the restaurant. The area in dispute consists of approximately 25 by 62 feet behind the restaurant.
¶ 7. All three businesses were developed and owned by Dr. and Mrs. M.E. Hinman over thirty years ago. The Hinmans later sold the three properties separately. Prior to buying the carwash in 1985, Hill managed the property for approximately *462 ten years. The Hinmans sold the bowling alley to John Magruder in 1993 and the restaurant to Lawrence Nosser in 1994. In December of 1999, Nosser sold his interest in the restaurant to Swan.
¶ 8. Hill, Magruder and Nosser testified that the parking lot which connects the restaurant, carwash, and bowling alley has been open and free of any obstruction for the past thirty years. They stated that Hill's customers access the carwash by either driving through the parking lot of the restaurant and the bowling alley or through the Hope Street entrance. A sign located on Clay Street for over ten years directs the public to the carwash behind the restaurant. Swan acknowledged that he was aware Hill's customers were accessing the carwash through the restaurant's parking lot.
¶ 9. After Swan bought the restaurant, he began to refurbish and remodel the premises. The renovations included moving a dumpster to the corner of the property and building a fence that was approximately eight feet tall and extended to the bowling alley's property line. These new changes instigated disputes over the property between Swan and Hill.
¶ 10. Swan stated that he moved the dumpster to keep it away from his newly built smoker because he saw it as a possible health hazard. He also said he built the fence in order to protect the restaurant from potential liability due to all the cars traveling across his property.
¶ 11. In 1988, Hill built an automatic carwash ten to twelve feet from Swan's property line. A customer must enter the automatic carwash on the side facing the restaurant. Hill testified that Swan placed the dumpster and the fence in front of the automatic carwash impeding his customers' ability to maneuver into the carwash. He also stated that the fence blocked visibility of the carwash from Clay Street. The fence was constructed approximately five days prior to the court's temporary restraining order.
¶ 12. Swan testified that the fence did not completely block access to the carwash. He stated that Hill's customers could access the carwash through Hope Street and through Clay Street by traveling over the right side of the bowling alley's property. Hill testified that it was virtually impossible to maneuver through the bowling alley's property because it was only twenty feet wide and the bowling alley's employees generally parked along that side.
¶ 13. Magruder and Nosser testified that Hill had over the years helped maintain the parking lot that connected all properties by filling in potholes. In July of 2000 Hill filled in potholes located on his property and Swan's property. He testified that after completion, Swan recreated the potholes by shoveling out the asphalt and placing it on the doorstep of Hill's office. Swan admitted that he did this act and stated that it was out of "pure meanness."

I. DID THE COUNTY COURT LACK JURISDICTION TO ENTER AN INJUNCTION AGAINST SWAN?
¶ 14. The county court "shall have jurisdiction concurrent with the circuit and chancery courts in all matters of law and equity wherein the amount of value of the thing in controversy shall not exceed ... the sum of $75,000." Miss.Code Ann. § 9-9-21(1) (Rev.2002). However, Miss.Code Ann. § 9-9-23 (Rev.2002) states:
The county judge shall have power to issue writs, and to try matters, of habeas corpus on application to him therefor, or when made returnable before him by a superior judge. He shall also have the power to order the issuance of writs of certiorari, supersedeas, attachments, *463 and other remedial writs in all cases pending in, or within the jurisdiction of, his court ... But he shall not have original power to issue writs of injunction, or other remedial writs in equity or in law except hereinabove specified as being within his jurisdiction unless a judge authorized to do so refers it to the county court.
Therefore, the two statutes seem to contradict one another.
¶ 15. In Welch v. Bryant 157 Miss. 559, 563, 128 So. 734, 736 (1930), the court held that the county court lacked power to issue an injunction to prohibit someone's further employment. The court held that this was an issue of civil rights and not appropriate for the county court. Id. However, a more recent case, citing Miss.Code Ann. § 9-9-21(1), stated that a "claim for specific performance of a contract of employment plus attendant injunctive relief is well within the jurisdiction of the county court on its equity side." Lee v. Coahoma Opportunities, Inc., 485 So.2d 293, 294 (Miss.1986).
¶ 16. Also in Welch the court stated that where "property or property interests" are involved, the county court has appropriate jurisdiction. Welch, 157 Miss. at 563, 128 So. at 736. Two cases have indicated that a county court has jurisdiction to rule on acts of replevin. McCoy v. McRae, 204 Miss. 309, 320, 37 So.2d 353, 356 (1948) and Vansant v. Dodds, 164 Miss. 787, 801, 145 So. 613, 614 (1933). Therefore, this Court finds that the injunctive order granted by the county court judge was within the meaning of the relevant statute as that statute has been interpreted by case law.

II. DID THE TRIAL COURT ERR IN GRANTING HILL AN EASEMENT BY NECESSITY?
¶ 17. "It is well established in our law that an easement may be created by grant, implication, or prescription." Screws v. Watson, 755 So.2d 1289, 1293(¶7) (Miss.Ct.App.2000) (citing Gulf Park Water Co., Inc. v. First Ocean Springs Development Co., 530 So.2d 1325, 1330 (Miss.1988)). "An implied easement must be continuous, apparent, permanent and necessary." Id. The terms easement by necessity and easement by implication are used interchangeably. Broadhead v. Terpening, 611 So.2d 949, 952-53 (Miss. 1992). "The burden of proof is on the claimant seeking an easement by necessity; the party must establish that he is implicitly entitled to the right of way across another's land." Leaf River Forest Products v. Rowell, 819 So.2d 1281, 1284(¶11) (Miss.Ct.App.2002).
¶ 18. Mississippi case law establishes that an easement by necessity may be created by proving only reasonable necessity rather than absolute physical necessity. Fourth Davis Island Land Company v. Parker, 469 So.2d 516, 520 (Miss. 1985). Therefore, the court will grant an easement where the land is not necessarily landlocked but would be "highly convenient or essential to the full enjoyment of the land." Id.
¶ 19. The concern of the court is only whether alternative routes exist. Id. at 521. If none exist then the easement will be considered necessary. Id. Where other alternatives exist, the court will grant an easement over the neighboring landowner's property if it is the only reasonably necessary alternative available. Id.
¶ 20. The trial judge agreed with Hill's assertion that he had obtained an implied easement due to the historical use of the land. It is clear from the record that Hill's property can be accessed from Clay and Hope Streets. Therefore, this Court must determine if accessing Hill's property through Swan's property is the only reasonably *464 necessary alternative. We conclude that it is not.
¶ 21. In determining what is reasonably necessary, the court looks to "whether an alternative would involve disproportionate expense and inconvenience." Id. "Such a situation would arise when the expense of making the means of access available would exceed the entire value of the property to which access was sought." Mississippi Power Company v. Fairchild, 791 So.2d 262, 266(¶11) (Miss.Ct.App.2001) (quoting Marshall v. Martin, 107 Conn. 32, 139 A. 348, 350 (1927)). If the land would be useless and valueless without the easement then the landowner is entitled to an easement. Id.
¶ 22. An easement is reasonably necessary if the landowner's only alternative route is by building a bridge. Alpaugh v. Moore, 568 So.2d 291, 295 (Miss.1990); Rotenberry v. Renfro, 214 So.2d 275, 278 (Miss.1968); Mississippi Power Company, 791 So.2d at 267(¶16). However, the court does not award easements when an alternate route exits but it is longer and more inconvenient. Wills v. Reid, 86 Miss. 446, 452, 38 So. 793, 795 (1905); Ganier v. Mansour, 766 So.2d 3, 8 (Miss.Ct.App.2000); Screws v. Watson, 755 So.2d 1289, 1294(¶8) (Miss.Ct.App.2000).
¶ 23. Hill asserts that Swan's obstructions caused his business to suffer lost profits during the year 2000. Joyce Hill, Hill's wife, testified without providing any documentation, that sales from the automatic carwash were $2,000 less than the previous year. Hill also stated that it would take two months to reconstruct the automatic carwash and that the project would be costly. Hill provided no estimate of the cost of remodeling his carwash or of the worth of his business. Due to Hill's failure to establish a disproportionate expense in using the alternate routes available to him, Hill failed to prove that he was entitled to an easement by necessity.

III. WHETHER HILL ESTABLISHED THAT HE HAD AN EASEMENT BY PRESCRIPTION.
¶ 24. "An easement by prescription arises where another's property is used for access without consent of the owner." Property Ownership, in 7 JEFFREY JACKSON & MARY MILLER, ENCYCLOPEDIA OF MISSISSIPPI LAW 19, § 60:23 (2001). Prescription is shown by use which is: (1) open, notorious and visible; (2) hostile; (3) under a claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for ten years. Rawls v. Blakeney, 831 So.2d 1205,1207(¶8) (Miss.Ct.App.2002).
¶ 25. In Hill's complaint he argued that he obtained a prescriptive easement because of the period of time he had been using the parking lot. However, the period of time does not begin to run until some form of objection to the use is made by the landowner. Sharp v. White, 749 So.2d 41, 42(¶8) (Miss.1999). In Hill's situation, Swan did not make an objection until January 2000 when he began to remodel the property. Therefore, the continuous and uninterrupted use of the property did not begin until January of 2000. Prior to Swan's ownership, Hill simply had the enjoyment of a mere permissive right of passage.

IV. WHETHER THE TRIAL COURT ERRED IN ORDERING AN OVERLY BROAD, VAGUE AND UNDULY BURDENSOME EASEMENT.
¶ 26. Because of this Court's ruling on the preceding issues, this question is now moot.
¶ 27.THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS REVERSED AND RENDERED. *465 COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, P.J., BRIDGES, THOMAS, LEE, IRVING AND MYERS, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY MCMILLIN, C.J. AND GRIFFIS, J.
SOUTHWICK, P.J., CONCURRING.
¶ 28. With respect for the opinion of the majority, I interpret differently both the statute on county court jurisdiction and the rules for easements by necessity. Still, I concur in the result.
County court jurisdictional statute
¶ 29. The majority finds a conflict between the statute that provides generally that county courts will have jurisdiction concurrent with chancery and circuit courts, and another statute that could be seen as restricting injunction authority. Miss.Code Ann. §§ 9-9-21 & 9-9-23 (Rev. 2002). I find no conflict. In my view, the injunction statute distinguishes between a county judge's "original power" to issue an injunction, as opposed to the power in cases "pending in, or within the jurisdiction" of the county court. For ease of discussion, I have added numbers and created paragraphs to various key parts of the statute that discusses the authority over injunctions.
(1) The county judge shall have power to issue writs, and to try matters, of habeas corpus on application to him therefor, or when made returnable before him by a superior judge.
(2) He shall also have the power to order the issuance of writs of certiorari, supersedeas, attachments, and other remedial writs in all cases pending in, or within the jurisdiction of, his court.
(3) He shall have the authority to issue search warrants in his county returnable to his own court or to any court of a justice of the peace within his county in the same manner as is provided by law for the issuance of search warrants by justices of the peace.
(4) In all cases pending in, or within the jurisdiction of, his court, he shall have, in term time, and in vacation, the power to order, do or determine to the same extent and in the same manner as a justice of the peace or a circuit judge or a chancellor could do in term time or in vacation in such cases.
(5) But he shall not have original power to issue writs of injunction, or other remedial writs in equity or in law except in those cases hereinabove specified as being within his jurisdiction:
(6) Provided, however, that when any judge or chancellor authorized to issue such writs of injunction, or any other equitable or legal remedial writs hereinabove reserved, shall so direct in writing the hearing of application therefor may be by him referred to the county judge, in which event the said direction of the superior judge shall vest in the said county judge all authority to take such action on said application as the said superior judge could have taken under the right and the law, had the said application been at all times before the said superior judge. The jurisdiction authorized under the foregoing proviso shall cease upon the denying or granting of the application.
Miss.Code Ann. § 9-9-23 (Rev.2002) (section numbers and paragraphs added).
¶ 30. The statute, on first reading, presents an analytical quagmire. After granting a county judge full authority in sections 1 through 4 to issue essentially all remedial writs, section 5 places some sort of limit on the authority as it pertains to suits seeking injunctive relief, then it grants additional power in section 6. Indeed, *466 the language may seem a meaningless circular proposition. Section 5 seems to provide that the county court does not have jurisdiction to enter injunctions except in those cases where it has jurisdiction of the case, and in such a case it then does have authority to enter an injunction, with the proviso of section 6 then serving an unknown purpose.
¶ 31. However, with the aid of a historical look at the statutory jurisdiction of a county court judge, the reason for this apparently circular language becomes clear. Some judges have long had authority to issue injunctions in cases that are not otherwise within the jurisdiction of that court. A county court judge has not been granted that right. That is the reason for this difficult language.
¶ 32. The power of a circuit or a chancery judge to issue an injunction has been substantially broader than one might assume. Under Section 9-1-19, a circuit judge or a chancellor can issue an injunction "returnable to any court, whether the suit or proceedings be pending in the district of the judge or chancellor granting the same or not...." Miss.Code Ann. § 9-1-19 (Rev.2002) (emphasis supplied). At least some by the late 1920s perceived that this statewide authority for judges to grant injunctions no matter where a case arose was the subject of abuse. The commissioners responsible for drafting the Mississippi Code of 1930 prepared a booklet to explain to the Legislature their reasons for proposing changes in State law. They wrote the following about changes that they were recommending in the authority of circuit judges and chancellors to issue injunctions:
The first of these provisions relates to a situation that has caused some embarrassing spectacles not only in this state but in other states. Namely, when an affirmance of conviction in a criminal case has been had and the sentence is about to be executed then first one kind of a writ and then another has been presented round over the state from one judge to another until some judge is found who will grant a writ to hold up the execution, then when this is untangled and the sheriff is about to execute the sentence again then another writ is presented.
Miss.Code of 1930, Explanatory Booklet, Ch. 13 § 633.
¶ 33. Just four years before this explanation, the Legislature authorized the first county courts in the state. 1926 Miss. Laws ch. 131. In that statute, a county judge was denied the "original power to issue writs of injunction or remedial writs other than of habeas corpus, but when any judge authorized to issue such writs of injunction or remedial writs shall so direct in writing the hearing of applications therefor may be by him referred to or be returnable before the county judge, in which event the said direction of the superior judge shall vest in the said county judge all authority to take such action therein as the said superior judge could have taken under the right and the law, had the said application and the said hearing been at all times before the said superior judge." 1926 Miss. Laws ch. 131, § 9. It appears that in that first statutory version, a county judge had authority to issue writs of injunction only if a "superior judge" delegated the right.
¶ 34. In 1930, the language that remains as section 9-9-23 was adopted. It constituted a substantial revision to the county judge's former power over injunctions. The power was expanded to permit the issuance of certain writs including injunctions in all cases "pending in, or within the jurisdiction of, his court," as stated in both sections 2 and 4 as I have enumerated the statutory sentences above; section *467 3 grants search warrant authority only within the judge's county. Section 5 of the current statute then gave a proviso that there was no "original power to issue writs of injunction ... except in those cases" that were in the county court's "hereinabove specified" jurisdiction. That is saying nothing more than unlike the other courts that under section 9-1-19 had statewide jurisdiction to issue injunctions, the county court was limited to the issuance of injunctions in cases that otherwise fell within its jurisdiction. The last section, which I have enumerated "6," still allowed a chancellor to send to the county judge a "hereinabove reserved" injunction issue. Therefore, on a case in which an injunction could be issued by a chancellor but not usually by a county judge, the chancellor could send the application to the county judge for a ruling. Section 1 has a similar effect.
¶ 35. Though perhaps not the clearest possible statute, that is because the context for the language is not immediately obvious. Coincident with the concerns raised by the 1930 Code commissioners about unlimited original injunction power in the constitutionally-created trial courts, a provision was written for the new statutory trial courts on the subject of injunctions. The county court statute limited injunction authority to cases otherwise properly brought to that particular county court. The statute did not allow litigants to bring still other injunction suits under an argument that the county judge had inherited the statewide authority of other judges.
¶ 36. In the case before us, the Warren County Court had jurisdiction of the underlying dispute as the amount in controversy did not exceed the county court's jurisdictional limit and the cause of action arose in that county. This county court had authority to enter an injunction in this case. Unlike the majority, I do not find that the reason for the authority is that property interests are involved. The authority exists because the cause of action was properly the subject of suit in the Warren County Court. Therefore, the remedy of injunction is available.
¶ 37. There is nothing contradictory about sections 9-9-23 and 9-9-21.
Easement by necessity
¶ 38. A minor point begins my discussion. The majority begins its analysis of easements by necessity by noting that an absolute necessity is not required, only a reasonable one. Though the matter is not contested, omitted from the analysis is the threshold element that the tract that is blocked in its access to a public road must have once been joined with the tract over which the access is allegedly necessary. Dieck v. Landry, 796 So.2d 1004, 1008 (Miss.2001). That predicate for an easement by necessity exists here. Still, this should not to be overlooked, as necessity of access without historical unity of tracts creates no easement right.
¶ 39. In addition, though this is not a discovered factor in the Mississippi precedents, surely a necessity does not arise because of something that the party seeking the easement has done to his own property that restricts otherwise usable access. A party with an opening to a street who builds a wall blocking his own access cannot then turn to his neighbor and demand an alternative route.
¶ 40. I find that in the present case, the primary reason for the difficulty of access is the manner in which Hill placed the car wash on the lot. Of course, he did so prior to any issue of an objection to his use of the access across Swan's property had arisen. Faith in one's neighbor is laudable, but it is not a legally enforceable basis for *468 an easement. Prior to creating this situation, it was incumbent on Hill to acquire more certain rights to the use of his neighbor's land. He did not. He now, unfortunately, is left with some expensive consequences.
¶ 41. For these reasons, I concur in the determination that no easement was created.
McMILLIN, C.J., AND GRIFFIS, J., JOIN THIS SEPARATE WRITTEN OPINION.