CARLTON, J.,
 

 for the Court.
 

 ¶ 1. This case comes before this Court from the judgment of the Chancery Court of Itawamba County granting Jimmy Hughes, Dan Pate, Ann Hughes Pate, Steven Izard, and Erma Hughes Izard (collectively, “the Appellees”)
 
 [1]
 
 an easement by necessity across Nella Daley’s property. Aggrieved, Daley appeals and argues that the chancellor erred in (1) considering inadmissible testimony and (2) finding that the Appellees had established an easement by necessity. We find no error and affirm.
 

 FACTS
 

 ¶ 2. The parties own abutting parcels of real property in Itawamba County, Mississippi. All of the property at issue was once under the common ownership of Joseph L. Hughes and Ophelia R. Hughes. In December 1937, Joseph and Ophelia divided their property in two equal shares between their two sons, Verlon Hughes and Webster Hughes. Verlon is the father or, as the case may be, the father-in-law of the Appellees; Webster is Daley’s father. Verlon subsequently divided his parcel among the Appellees by deeds dated September 18, 1965, and February 28, 1971.
 
 [2]
 
 In 1997, Webster deeded a portion of his property to Daley and another portion to Daley’s sister. In 2002, Daley’s sister deeded her interest to Daley.
 

 ¶ 3. The initial division of Joseph and Ophelia’s property between Verlon and Webster was accomplished in such a way that Gum Creek bisected Verlon’s parcel in a south easterly direction. This rendered the southern portion of Verlon’s parcel accessible only by crossing the creek from the northern portion of his parcel or by using an old field road, running from Red
 
 *367
 
 Roberts Road, a public road, in an easterly direction across the northerly edge of Webster’s parcel and along the south side of the creek. Verlon farmed the southern portion of his property and used the old field road to access this land for farming equipment. Verlon eventually stopped farming, whereupon, he leased his property to Danny Holley (Holley), who farmed the land with the help of his sons.
 

 ¶ 4. When Verlon divided his property among the Appellees, each received a parcel that was bisected by the creek. The Appellees continued to lease the property to the Holley family for farming, and both the Holley family and the Appellees continued to use the old field road until August 2003, when Daley “marked her property line” by erecting a barricade across the old field road using railroad ties, wooden posts, chains, cables, barbed wire, steel rebar rods, and numerous warning signs. As a result, the Holley family ceased leasing the Appellees’ land. The Appellees considered building a bridge across the creek, but concluded that it would be too expensive. They later filed suit to establish an easement to enable the continued use of the old field road as a means to access the southern portions of their respective parcels.
 

 ¶ 5. After a bench trial, the chancellor granted the Appellees an implied easement by necessity across Daley’s property to use the old field road. Aggrieved, Daley now appeals to this Court.
 

 STANDARD OF REVIEW
 

 ¶ 6. On appeal, we will not disturb the findings of the chancellor unless manifestly wrong or clearly erroneous.
 
 Leaf River Forest Prods. v. Rowell,
 
 819 So.2d 1281, 1283(7) (Miss.Ct.App.2002). We will affirm the chancellor’s findings where there is substantial evidence in the record that supports his or her findings.
 
 Id.
 

 DISCUSSION
 

 I. Whether the chancellor improperly considered inadmissible testimony regarding the cost to construct a bridge across the creek.
 

 ¶ 7. Daley’s argument under this issue is based upon the testimony of Holley, who was accepted as an expert in the area of bridge construction and testified that constructing a bridge across the creek would cost at least $10,000. Daley claims that the chancellor erred in admitting Holley as an expert under Mississippi Rule of Evidence 702 because he had no experience in constructing bridges across private property. The Appellees argue that Daley failed to interpose an objection to Holley’s testimony, and this issue is waived on appeal.
 

 ¶ 8. Prior to his acceptance as an expert, Holley explained that he had served as supervisor for Itawamba County for approximately nineteen years and was presently serving as president of the board of supervisors. He stated that he deals with the bidding, construction, maintenance, and repair of bridges almost daily in his position as supervisor. Holley testified that he had farmed the subject property since 1973 and was very familiar with the creek at issue. Daley stipulated to Holley being admitted as an expert about bridges that traverse county roads, but not field roads. However, Daley interposed no objection to Holley’s testimony.
 

 ¶ 9. “It is well-settled law that the failure to make a contemporaneous objection waives the right of raising the issue on appeal.”
 
 Lang v. State,
 
 931 So.2d 689, 691(11) (Miss.Ct.App.2006) (citing
 
 Ballenger v. State,
 
 667 So.2d 1242, 1259 (Miss. 1995)). In the instant case, Daley’s refusal to stipulate to Holley being admitted as an expert on bridges traversing field roads was insufficient to preserve the issue for
 
 *368
 
 appeal. Daley made no contemporaneous objection. Therefore, we find that Daley waived her challenge to the admissibility of Holley’s testimony. This issue is procedurally barred.
 

 II. Whether the chancellor erred in granting an easement by necessity.
 

 ¶ 10. Under this assignment of error, Daley raises two issues: (1) whether the chancellor erred in finding that the necessity for the easement arose at the time the property was initially divided by the common owners, Joseph and Ophelia, and (2) whether the chancellor erred in finding that the cost of building a bridge involved disproportionate expense.
 

 ¶ 11. “[A]n easement by necessity arises by implied grant when a part of a commonly-owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing on the lands of another.”
 
 Broadhead v. Terpening,
 
 611 So.2d 949, 953 (Miss.1992). An easement by necessity is based upon “ ‘the implication that someone who owned a large tract would not intend to create inaccessible smaller parcels.’ ”
 
 Leaf River Forest Prods.,
 
 819 So.2d at 1284(10) (quoting
 
 Cox v. Trustmark Nat’l Bank,
 
 733 So.2d 358, 357(20) (Miss.Ct.App.1999)). To establish an easement by necessity, one must prove that (1) the dominant and servient parcels were once under common ownership, (2) severance by the common owner(s), (3) the necessity for the easement arose at the time of the severance by the common owner(s), and (4) the necessity is continuing.
 
 Leaf River Prods.,
 
 819 So.2d at 1284-85 (9-11) (citations omitted). An easement by necessity “is a vested right for successive holders of the dominant tenement and remains binding on successive holders of the servient tenement.”
 
 Huggins v. Wright,
 
 774 So.2d 408, 411(9) (Miss.2000) (citing
 
 Broad,head,
 
 611 So.2d at 954).
 

 1. Whether the necessity was created by the common owners’ severance.
 

 ¶ 12. Daley argues that the chancellor erred in finding that the necessity for the easement arose at the time the property was divided by the common owners, Joseph and Ophelia, between Verlon and Webster. She claims that the necessity for the easement arose out the division by Verlon between the Appellees. We disagree.
 

 ¶ 13. It is undisputed that all of the property at issue was once under the common ownership of Joseph and Ophelia. Further, the evidence in the record establishes that the division by Joseph and Ophelia’s property between Verlon and Webster was accomplished in such a way that the southern portion of Verlon’s parcel (now owned in separate parcels by the Appellees) was rendered accessible only by crossing the creek or using the old field road on Webster’s parcel (now owned by Daley). This is evidenced by the fact that upon Joseph and Ophelia’s severance, Ver-lon and the Holley family used the old field road on Webster’s parcel to access the portion of Verlon’s land situated south of the creek, and the continued use of the old field road by the Appellees and the Holley family when the Appellees received their respective parcels from Verlon.
 

 ¶ 14. Accordingly, we find that substantial evidence supports the chancellor’s finding that the necessity for the easement arose at the time the property was severed by its common owners. This issue is without merit.
 

 2. Whether the chancellor eired in finding that the cost of building a bridge involved, disproportionate expense.
 

 ¶ 15. Daley argues that the Appel-lees could access the southern portion of
 
 *369
 
 their respective parcels by an alternate route — by constructing a bridge across the creek. She claims that the chancellor erred in finding that building a bridge at a cost of at least $10,000 involved disproportionate expense and inconvenience or, stated differently, was cost prohibitive.
 

 ¶ 16. “An easement by necessity may be created by proving only reasonable necessity rather than absolute physical necessity.” Bur
 
 ns v. Haynes,
 
 913 So.2d 424, 430(26) (Miss.Ct.App.2005) (citation omitted). “Therefore, the court will grant an easement where the land is not necessarily landlocked but would be ‘highly convenient or essential to the full enjoyment of the land.”’
 
 Swan v. Hill,
 
 855 So.2d 459, 463(18) (Miss.Ct.App.2003) (quoting
 
 Fourth Davis Island Land Co. v. Parker,
 
 469 So.2d 516, 520 (Miss.1985)).
 

 ¶ 17. Where alternative routes exist, an implied easement by necessity will be granted “if it is the only reasonably necessary alternative available.” Bur
 
 ns,
 
 913 So.2d at 430(26) (citing
 
 Parker,
 
 469 So.2d at 521). The Mississippi Supreme Court has stated that reasonable necessity “should be judged by whether an alternative would involve disproportionate expense or inconvenience, or whether a substitute can be furnished by reasonable labor or expense.”
 
 Parker,
 
 469 So.2d at 521 (citation omitted). “Such a situation would [clearly] arise when the expense of making the means of access available would exceed the entire value of the property to which access was sought.”
 
 Swan,
 
 855 So.2d at 464(21) (quoting Miss.
 
 Power Co. v. Fairchild,
 
 791 So.2d 262, 266(11) (Miss.Ct.App.2001)).
 

 ¶ 18. Daley cites
 
 Fairchild
 
 and
 
 Rotenberry v. Renfro,
 
 214 So.2d 275, 278 (Miss. 1968) and argues that the facts of the instant case involve far less expense and inconvenience than that involved in those cases. She also cites to
 
 Swan
 
 and argues that the Appellees failed to present evidence comparing the cost of building a bridge ($10,000) to the value of the land to which access was sought, in that, no evidence was presented regarding the value of the Appellees’ land south of the creek. Daley essentially claims that the Appellees failed to meet their burden of proving that the easement sought was reasonably necessary.
 

 ¶ 19. Our reviewing courts have, on several occasions, held that an easement is reasonably necessary where the landowner’s only alternative route is by building a bridge.
 
 See Rotenberry,
 
 214 So.2d at 278;
 
 Alpaugh, v. Moore,
 
 568 So.2d 291, 295 (Miss.1990);
 
 Fairchild,
 
 791 So.2d at 267(16).
 

 ¶ 20. In
 
 Fairchild,
 
 this Court affirmed a trial court’s finding that an easement was reasonably necessary where building a bridge across Okatoma Creek would cost $250,000.
 
 Fairchild,
 
 791 So.2d at 265-67 (11-14). Similarly, in
 
 Rotenberry,
 
 the Mississippi Supreme Court determined that an easement was reasonably necessary where a landowner, in order to reach his land, would have to construct a bridge across the Tallahatchie River or the Yocona Drainage Channel.
 
 Rotenberry,
 
 214 So.2d at 278. While the expense and inconvenience at issue in
 
 Fairchild
 
 and
 
 Rotenberry
 
 were clearly greater than that at issue in the instant case, we do not find that reversal is required here.
 

 ¶ 21. In
 
 Alpaugh,
 
 the Mississippi Supreme Court held that the landowners seeking an easement by necessity met their burden of establishing reasonable necessity “by a showing that they have no other dry access to their land.”
 
 Alpaugh,
 
 568 So.2d at 295. In reaching this decision, the court reasoned as follows:
 

 [The burden of proving reasonable necessity] is met by the Moores based
 
 *370
 
 upon the fact that their property is bound on three (3) sides by water and on the fourth side by the Alpaugh property. The Alpaughs erroneously contend that the Moores cannot show “necessity” because they have failed to explore the option of building a bridge to their land. This burden, however, will not be required due to the unreasonableness inherent in such an undertaking.
 
 Rotenberry v. Renfro,
 
 214 So.2d 275 (Miss. 1968).
 

 Id.
 

 ¶ 22. The
 
 Alpaugh
 
 decision, citing
 
 Ro-tenberry,
 
 essentially holds that the act of building a bridge is inherently unreasonable.
 
 Id.
 
 Consistent with
 
 Alpaugh,
 
 this Court has cited
 
 Fairchild, Rotenberry,
 
 and
 
 Alpaugh
 
 for the proposition that “[a]n easement is reasonably necessary if the landowner’s only alternative route is by building a bridge.”
 
 Swan,
 
 855 So.2d at 464(22) (citations omitted).
 
 [3]
 
 Additionally, we note that the supreme court in
 
 Rotenberry
 
 did not inquire into the costs associated with building a bridge or compare those costs with the value of the land for which access was sought.
 

 ¶ 23. Given the deference afforded to a chancellor’s findings, we cannot say that the chancellor was manifestly wrong or clearly erroneous in her determination that the easement was reasonably necessary — that building a bridge would be cost prohibitive. Under the holdings and expressions of the reviewing courts in
 
 Al-paugh, Rotenberry,
 
 and
 
 Swan,
 
 we find no error in the chancellor’s finding that the easement was reasonably necessary because the Appellees only alternative route was by constructing a bridge across the creek at a cost of at least $10,000. This issue is without merit.
 

 ¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF ITAWAMBA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
 

 [1]
 

 . This Court does not ordinarily identify the parties by "appellant(s)" or "appellee(s)." However, we do so here in the interests of clarity.
 

 [2]
 

 . Specifically, Verlon divided his property among the Appellees as follows: Ann Hughes Pate and Dan Pate received title to a portion by deed dated September 18, 1965; Jimmy Hughes received title to a portion by deed dated February 28, 1971; Erma Hughes Izard and Steve Izard received title to a portion by deed dated February 28, 1971.