ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. D.L. and Mary Harkness sued But-terworth Hunting Club (BHC) for trespass, to quiet title, and to enjoin BHC from trespassing across a portion of the Harknesses’ property in Holmes County, Mississippi. BHC countersued for an easement by necessity. The Holmes County Chancery Court declined to grant the Harknesses any relief and awarded BHC an easement by necessity. Aggrieved, the Harknesses appeal. After careful consideration, we find that the chancery court erred when it awarded BHC an easement by necessity. Accordingly, we reverse the judgment of the chancery court and render a judgment in favor of the Harknesses enjoining BHC from trespassing on the Harknesses’ property.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. BHC acquired the title to its property via a warranty deed from Holmes and Carroll Land Company, Inc. in April 1992. It is undisputed that BHC’s property was landlocked at that time. BHC did not
 
 *705
 
 obtain access to its property by way of an easement by necessity. One month earlier, M.V. Cooley acquired adjacent property from Holmes and Carroll. That property changed hands three more times before the Harknesses acquired it in 2007. BHC’s property and the Harknesses’ property were both once part of a common tract. However, BHC and the Harknesses do not derive their respective titles from the same grantor.
 

 ¶ 3. BHC also leased sixteenth section land for hunting. The sixteenth section land that BHC leased adjoined both BHC’s and the Harknesses’ property. ' BHC accessed its property via a road (the Road) that begins on a public road known as Hebron Road. The Road then crosses the previously mentioned sixteenth section land, runs across the southwest corner of the Harknesses’ property, and finally runs onto BHC’s property. BHC’s access across the Harknesses’ property via the Road is the center of this dispute.
 

 ¶ 4. For many years, BHC leased or had permission to use the Road. After the Harknesses acquired their property in 2007, they asked BHC to refrain from using the Road. BHC used the Road anyway. BHC contended that the Road was a public road. Failing that, BHC also claimed that it had an easement by necessity or a prescriptive easement to traverse the Harknesses’ property. The Harkness-es attempted to block BHC from using the Road. BHC cut locks on gates that the Harknesses had erected, cut fences on the Harknesses’ property, and filled ditches that the Harknesses dug at each end of the Road.
 

 ¶ 5. In December 2007, the Harknesses sued BHC on multiple theories intended to prevent BHC from trespassing on their property. BHC argued that the Road was a public road; therefore, the Harknesses had no authority to prevent BHC from using the road for ingress and egress to its property. BHC also countersued and argued that it was entitled to an easement to traverse the Harknesses’ property. The parties went before the chancellor in June 2009. In September 2009, the chancellor rendered her opinion. The chancellor found that, to access BHC’s property by some means other than by use of the Road, BHC would have to build a new road and cross “several deep ravines” by either building a bridge or placing a culvert across one or more ditches. The chancellor further found that it would be “very expensive” for BHC to do so. The record does not indicate that the chancellor personally viewed the property or the “several deep ravines.” There was no testimony regarding what it would cost to cross the “ravines.” Nevertheless, according to the chancellor, BHC was, therefore, entitled to an easement by necessity. The Harknesses claim the chancellor erred when she awarded BHC an easement by necessity.
 

 STANDARD OF REVIEW
 

 ¶ 6. Unless they were either manifestly wrong or clearly erroneous, we will not disturb the chancellor’s findings on appeal.
 
 Daley v. Hughes,
 
 4 So.3d 364, 367 (¶ 6) (Miss.Ct.App.2008). If there is substantial evidence that supports the chancellor’s decision, we will affirm.
 
 Id.
 

 ANALYSIS
 

 ¶ 7. The Harknesses argue that the chancellor erred when she awarded BHC an easement by necessity. The Harkness-es base their claim on the following arguments: (1) BHC was landlocked at the time it acquired its property; (2) BHC does not derive its title from the same person from whom the Harknesses acquired their title; and (3) BHC failed to sustain its burden of proof regarding the
 
 *706
 
 expenses involved with obtaining access to its property by some means other than the Road.
 

 ¶ 8. “[A]n easement by necessity arises by implied grant when a part of a commonly-owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing on the lands of another.”
 
 Broadhead v. Terpening,
 
 611 So.2d 949, 953 (Miss.1992). The concept regarding an easement by necessity is based upon “the implication that someone who owned a large tract would not intend to create inaccessible smaller parcels.”
 
 Leaf River Forest Prods., Inc. v. Rowell,
 
 819 So.2d 1281, 1284 (¶ 10) (Miss.Ct.App.2002) (quoting
 
 Cox v. Trustmark Nat’l Bank,
 
 733 So.2d 353, 356 (¶20) (Miss.Ct.App.1999)). To demonstrate a prima facie case for an easement by necessity, a claimant must prove that “(1) the dominant and servient parcels were once under common ownership, (2) severance by the common owner®, (3) the necessity for the easement arose at the time of the severance by the common owner(s), and (4) the necessity is continuing.”
 
 Daley,
 
 4 So.3d at 868 (¶ 11).
 

 ¶ 9. As mentioned above, the Hark-nesses argue that BHC failed to sustain its burden of proving that its property became landlocked as a result of the Hark-nesses’ acquisition of their property. Specifically, the Harknesses argue as follows:
 

 BHC’s witnesses — officers and stockholders in BHC — testified that they knew that the BHC land was landlocked when they purchased it in 1992. Moreover, these same witnesses testified that they knew that BHC’s land was severed from a landlocked tract of land. BHC presented
 
 no
 
 evidence to show when or how Holmes and Carroll Land Company’s land — the larger tract from which its land was severed and conveyed— became landlocked or what means of access may have been available at the time Holmes and Carroll Land Company’s land became landlocked.
 

 (Internal citations omitted). Stated differently, the Harknesses claim that BHC was not entitled to an easement by necessity because BHC knowingly acquired landlocked property from a dominant estate that was, itself, landlocked. Essentially, the Harknesses argue that they should not be responsible for providing BHC with access to its property when they were not responsible for BHC’s property becoming landlocked, and they will not be compensated in any way for the easement that BHC obtained.
 

 ¶ 10. BHC argues that it is irrelevant that its property was landlocked at the time it acquired it. BHC cites to precedent that held: “[A]n easement by necessity will be granted when the land is not necessarily landlocked but would be ‘highly convenient or essential to the full enjoyment of the land.’ ”
 
 Sturdivant v. Todd,
 
 956 So.2d 977, 993 (¶ 54) (Miss.Ct. App.2007) (quoting
 
 Fourth Davis Island Land Co. v. Parker,
 
 469 So.2d 516, 520 (Miss.1985)). BHC also claims that the pertinent consideration “is limited to whether the alternative route would involve disproportionate expense and inconvenience.”
 
 Id.
 
 BHC also relies on
 
 Sturdi-vant
 
 for the principle that an alternative route involves disproportionate expense and inconvenience “when the expense of making the means of access available would exceed the entire value of the property to which access was sought.”
 
 Id.
 
 (quoting
 
 Miss. Power Co. v. Fairchild,
 
 791 So.2d 262, 266 (¶ 11) (Miss.Ct.App.2001)). However, “[a]n easement by necessity will not be awarded when the only evidence before the court is that the alternative route would be longer and more inconven
 
 *707
 
 ient.”
 
 Id.
 
 (citing
 
 Swan v. Hill,
 
 855 So.2d 459, 464 (¶ 22) (Miss.Ct.App.2003)).
 

 ¶ 11. BHC is correct that this Court has held that an easement by necessity will be awarded “where the land is not necessarily landlocked but would be highly convenient or essential to the full enjoyment of the land.”
 
 Id.
 
 (internal citation omitted).
 
 See also Daley v. Hughes,
 
 4 So.3d 364, 369 (¶ 16) (Miss.Ct.App.2008) (quoting
 
 Swan,
 
 855 So.2d at 463 (¶ 18)). That language originated from the Mississippi Supreme Court’s decision in
 
 Fourth Davis Island Land Co.,
 
 469 So.2d at 520. After carefully reviewing the supreme court’s decision in
 
 Fourth Davis Island,
 
 it is clear that this Court’s decisions regarding the concept that an easement by necessity will be awarded upon a demonstration of convenience or upon a demonstration that an easement is essential to the full enjoyment of the land are misapplications of the supreme court’s attempt to distinguish two distinctly separate concepts.
 

 ¶ 12. In
 
 Fourth Davis Island,
 
 the supreme court distinguished two types of easements by necessity; those involving what the supreme court termed “ways of necessity,” and those involving matters that may be “highly convenient or essential to the full enjoyment of the land.”
 
 Id.
 
 at 521. The supreme court cited two cases as examples of circumstances in which an easement may qualify as one which is highly convenient or essential to the full enjoyment of the land.
 
 Id.
 
 One case,
 
 Shipman v. Lovelace,
 
 214 Miss. 241, 249, 58 So.2d 657, 659 (1952), involved an attempt to secure an easement for access to a sewer. The other case,
 
 Hutcheson v. Summit,
 
 220 Miss. 834, 838, 72 So.2d 225, 226 (1954), involved an attempt to secure an easement for access to a water line.
 
 Fourth Davis Island
 
 involved an attempt to secure an easement for electrical service.
 
 Fourth Davis Island,
 
 469 So.2d at 517. The supreme court held that there is one standard of proof that applies to an attempt to obtain an implied easement for utility services, and a different standard of proof that applies to an attempt to obtain an implied easement for the purpose of ingress and egress over another landowner’s property. The supreme court clearly held that “[sjince the easement sought by Fourth Davis is not a way of necessity, it follows that the chancellor should not have held Fourth Davis to the burden of proving strict necessity but instead reasonable necessity.”
 
 Id.
 
 Conversely, one must prove strict necessity to obtain an implied easement involving a “way of necessity.”
 
 Id.
 
 To the extent that this Court has held otherwise, we now correct those misapplications of the supreme court’s decisions.
 

 ¶ 13. We also take this opportunity to clarify another matter. The Harknesses argue that the chancellor erred when she awarded BHC an easement by necessity because BHC failed to present evidence regarding the expenses involved in accessing BHC’s property by some means other than the Road. It was undisputed that BHC had an alternate route to access its land without trespassing across the Hark-nesses’ property, although that means was more inconvenient to BHC, and it would be more expensive than acquiring an easement by necessity from the Harknesses. In
 
 Evanna Plantation, Inc. v. Thomas,
 
 999 So.2d 442, 447 (¶ 16) (Miss.Ct.App. 2009), this Court held that, because there was insufficient proof that a bridge was the sole means to access property, there was no testimony regarding the expense involved with crossing a body of water, and there was no testimony as to the value of the property to be accessed, the chancellor did not err when he declined to award an easement by necessity.
 

 ¶ 14. However, in
 
 Daley,
 
 4 So.3d at 369 (¶ 18), this Court found no error in a
 
 *708
 
 chancellor’s decision to award an easement by necessity where the appellees in that case “failed to present evidence comparing the cost of building a bridge ($10,000) to the value of the land to which access was sought, in that, no evidence was presented regarding the value of the Appellees’ land south of the creek.”
 
 Daley
 
 relied on three cases for its holding that proof of the value of the land to which access is sought is not essential to prove reasonable necessity for an easement:
 
 Alpaugh v. Moore,
 
 568 So.2d 291 (Miss.1990),
 
 Rotenberry v. Renfro,
 
 214 So.2d 275 (Miss.1968), and
 
 Mississippi Power Co. v. Fairchild,
 
 791 So.2d 262 (Miss.Ct.App.2001). Those cases all involved attempts to secure access by way of the procedure discussed in what eventually became Mississippi Code Annotated section 65-7-201 (Rev.2005).
 
 Alpaugh,
 
 568 So.2d at 293;
 
 Rotenberry,
 
 214 So.2d at 276;
 
 Fairchild,
 
 791 So.2d at 265 (¶ 10). Those cases did not pertain to a landowner’s attempt to secure a “way of access” easement by necessity across another landowner’s property. Accordingly,
 
 Al-paugh, Rotenberry,
 
 and
 
 Fairchild
 
 should not be interpreted in a manner that allows a landowner to obtain a “way of access” easement by necessity without the necessary proof of the costs involved in obtaining alternative access to property or the relative costs of the property one seeks to access. To clarify, we reiterate that an easement by necessity will not be awarded when the only evidence presented was that an alternative route would be longer and less convenient.
 
 Swan,
 
 855 So.2d at 464 (¶ 22). Where one seeks to obtain a “way of access” easement by necessity but submits no evidence as to the allegedly higher costs of an alternative route, a trial court will not err in declining to award an easement. Because BHC presented no evidence regarding the costs of accessing its property by some means other than by crossing the Harknesses’ land, the chancellor further erred when she awarded BHC an easement by necessity without any supporting proof. Simply stating that it would appear to be “very expensive” to access property by some other means is not sufficient.
 

 ¶ 15. It bears mentioning that BHC had the option of employing a different legal mechanism to secure access over the Road. Mississippi Code Annotated section 65-7-201 (Rev.2005) provides as follows:
 

 When any person shall desire to have a private road laid out through the land of another, when necessary for ingress and egress, he shall apply by petition, stating the facts and reasons, to the special court of eminent domain created under Section 11-27-3 of the county where the land or part of it is located, and the case shall proceed as nearly as possible as provided in Title 11, Chapter 27 for the condemnation of private property for public use. The court sitting without a jury shall determine the reasonableness of the application. The owner of the property shall be a necessary party to the proceedings. If the court finds in favor of the petitioner, all damages that the jury determines the landowner should be compensated for shall be assessed against and shall be paid by the person applying for the private road, and he shall pay all the costs and expenses incurred in the proceedings.
 

 However, in the event that BHC obtained an easement across the Harknesses’ land pursuant to the procedure set forth in section 65-7-201, BHC would have been required to compensate the Harknesses for its involuntary taking of an interest in the Harknesses’ property. Here, BHC sought to obtain access in a manner that, if sufficiently demonstrated, would not have required it to compensate the Harknesses at all. In any event, we find that the chancellor abused her discretion when she
 
 *709
 
 found that BHC had presented sufficient proof of its entitlement to an easement by-necessity without presenting any evidence regarding the expenses involved in accessing its property in some manner other than by driving on the Harknesses’ property. Accordingly, we reverse the judgment of the chancellor and render judgment for the Harknesses.
 

 ¶ 16. THE JUDGMENT OF THE HOLMES COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.