# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00962-COA

JOSEPH E. DAVIDSON AND TINA C. DAVIDSON          APPELLANTS

v.

WILLIAM DWIGHT COLLINS AND NANCY L. COLLINS          APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 01/13/2014 |
| TRIAL JUDGE: | HON. T. LARRY WILSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEY FOR APPELLANTS: | E. FOLEY RANSON |
| ATTORNEY FOR APPELLEES: | MARK H. WATTS |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | DENIED RIGHT-OF-WAY EASEMENT |
| DISPOSITION: | AFFIRMED - 12/01/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

BARNES, J., FOR THE COURT:

¶1. Joseph and Tina Davidson leased approximately 2.3 acres located on the Escatawpa River for approximately twenty-five years before finally purchasing the land in 2002. The property, which is south of Mississippi Highway 614 and abuts the State's right-of-way, is surrounded by water on three sides and by property owned by Dwight Collins and his wife, Nancy, on the remaining (east) side. The Collinses' land, comprising approximately forty acres, was purchased in 1996.

¶2. According to Joseph, his family used the property, which had a sandbar and dock area,

"[f]or recreation mostly; going down there and enjoying weekends in the summer." From 2006 to 2011, the family utilized the old Highway 614 right-of-way to access the property, requiring them to cross over onto the Collinses' property. The Collinses permitted the Davidsons to access the property, and Joseph said that the Collinses even used it occasionally and that he and Dwight used to hunt together.

¶3.     However in June 2011, the amount of traffic going to the sandbar became an annoyance to the Collinses; so they told the Davidsons they could no longer access the property via the right-of-way. The Collinses rejected subsequent attempts by the Davidsons to negotiate an easement to the property.

¶4.     Alternatively, the Davidsons contacted the Mississippi Department of Transportation (MDOT), seeking a permit to access the property across Highway 614 via a parallel easement. However, the MDOT denied the Davidsons' request twice, and placed large boulders at that location to prevent access.

¶5.     On May 31, 2013, the Davidsons filed a complaint in the County Court of Jackson County, sitting as a special court of eminent domain, seeking a right-of-way easement across the Collinses' property. *See* Miss. Code Ann. § 65-7-201 (Rev. 2012). The Collinses meanwhile built a canal on their property in 2012 where the proposed easement would be located. Although the county court determined that the property was "indeed landlocked," it denied the Davidsons' request for a private easement, concluding that the easement was "not a real necessity, but a mere convenience." The Davidsons filed a motion to reconsider, which the county court denied.

2

¶6.    The Davidsons appeal the county court's finding that they were not entitled to a right-of-way easement to access the property at issue. Finding no error, we affirm.

**DISCUSSION**

¶7.    Mississippi Code Annotated section 65-7-201 states in pertinent part:

> When any person shall desire to have a private road laid out through the land of another, *when necessary for ingress and egress*, he shall apply by petition, stating the facts and reasons, to the special court of eminent domain created under Section 11-27-3 of the county where the land or part of it is located, and the case shall proceed as nearly as possible as provided in Title 11, Chapter 27 for the condemnation of private property for public use. The court sitting without a jury shall determine the reasonableness of the application.

(Emphasis added). The phrase "necessary for ingress and egress" has been interpreted by our supreme court "as reasonably necessary and not absolutely necessary." *Gibbes v. Hinds Cnty. Bd. of Sup'rs*, 952 So. 2d 1011, 1015 (¶8) (Miss. Ct. App. 2007) (citing *Quinn v. Holly,* 244 Miss. 808, 813, 146 So. 2d 357, 359 (1962)).

¶8.    The Davidsons cite *May v. Adirondack Timber LLC*, 129 So. 3d 219 (Miss. Ct. App. 2013), to support their claim that the request for a right-of-way easement in this case was reasonably necessary. In *May*, the subject property was landlocked – surrounded on three sides by a creek, a river, and a railroad company that refused to provide a permanent crossing. *Id*. at 220 (¶3). The trial court "found Adirondack met the statutory requirements and granted a 50-foot-wide easement for a private road[.]" *Id*. at 221 (¶4). Concluding that Adirondack's need for a right-of-way to harvest its mature timber was reasonably necessary, we affirmed the trial court's holding. *Id*. at 222 (¶14).

¶9.    But as the Collinses note, *May* is distinguishable from the present circumstances.

3

"Because 'the right to control and use of one's property is a sacred right not to be lightly invaded or disturbed,' in order to invade this right and be granted a private road over the Mays' property, Adirondack had to show 'real necessity, not just mere convenience.'" *Id*. at 221 (¶10) (quoting *Hooks v. George Cnty.*, 748 So. 2d 678, 681-82 (¶¶15, 21) (Miss. 1999)).

¶10. Some courts have held:

> Land abutting navigable water is generally not entitled to an easement by necessity over neighboring land. *This is so because navigable water is considered a public highway*, and therefore, land accessible by navigable water cannot be landlocked. Land abutting navigable water is not entitled to an easement by necessity simply because water access to the parcel is inconvenient.

*See Murch v. Nash*, 861 A.2d 645, 652 (Me. 2004) (emphasis added and internal citations omitted);[1] *see also Foti v. Noftsier*, 901 N.Y.S.2d 434, 437 (N.Y. App. Div. 2010) ("[T]he availability of access to [plaintiffs'] property by a navigable waterway would defeat their entitlement to easements by necessity."). "[Yet, c]onvenience alone can form no basis for such an easement. A way of necessity must be strictly necessary and if land is accessible by navigable water, no way of necessity exists. . . . The burden to establish that a lake is not navigable is upon the party seeking the easement." *Koepp v. Holland*, 688 F. Supp. 2d 65, 85-86 (N.D.N.Y. 2010). The "modern" view of this issue attempts to strike a balance, generally considering whether access by boat is equivalent to public access on a case-by-case

---

[1] In the context of these cases, the term "navigable water" is generally equated to that of a public road. *See Flood v. Earle*, 71 A.2d 55, 57 (Me. 1950) ("Bodies of water are navigable when they are used, or are capable of being used, in their ordinary condition as highways. This is a question of fact."); *see also Taylor v. W. Va. Pulp & Paper Co.*, 137 S.E.2d 833, 836 (N.C. 1964) ("A navigable stream is a public highway.").

basis. In *Parker v. Putney*, 492 S.E.2d 159, 161-62 (Va. 1997), the Virginia Supreme Court noted:

> A showing of access to land across navigable water may in some circumstances defeat a claim of an easement by necessity. However, the modern view is that a way of necessity may exist, even though the dominant estate borders on a waterway, if the water route is not available or suitable to meet the requirements of the uses to which the property would reasonably be put.

(Internal quotations and citations omitted).

¶11. "A claimant seeking an easement by necessity has the burden of proof and must establish that he is entitled to a right of way across another's land." *King v. Gale*, 166 So. 3d 589, 597 (¶38) (Miss. Ct. App. 2015) (quoting *Fike v. Shelton,* 860 So. 2d 1227, 1230 (¶11) (Miss. Ct. App. 2003)). We find that the Davidsons have failed to meet this burden of proof. As observed by the county court, the Davidsons only utilized the property in the summer months for purely recreational purposes, and there was a public boat lunch within two hundred yards of the sandbar and dock area. Joseph further acknowledged that the area he had proposed for a right-of-way easement was "wetlands" and "floods probably six to eight, maybe even a dozen times annually," and he stated he had no intentions of building any camp or building on the property.

¶12. In a factually similar case, the Superior Court of Connecticut concluded that, in circumstances where the majority of the land at issue was unusable and the rest only used for recreational use, there was not a sufficient showing of reasonable necessity for an easement. The court noted:

> The fact that the defendant's Lot 6 abuts the Connecticut River does not, in

5

and of itself, prevent this court from finding an easement by necessity. The court cannot consider the "necessity" or "reasonableness of access" in a vacuum. The defendant and others testified as to how Lot 6 has been used and enjoyed over the years. The actual square footage used of this strangely shaped parcel is a very small percentage of the entire parcel. The inhospitable nature of the terrain and swamp renders the vast majority of the parcel unusable. Only a small clearing abutting the river has ever been cleared for recreational purposes. *The defendant testified that her use of the property was limited primarily to sitting in a chair by the river and accessing her pontoon boat at mooring at her river frontage. The defendant further testified that she was able to access her property every day (without crossing over Lot 48 or Lot 5) by either taking a row boat from the public boat launch at Rock Landing Road or walking along the river bank from that same location.* There is no need in this case for the defendant to be able to provide access to her land for a plow to remove snow from a driveway or Roto-Rooter to service a septic system. The defendant has failed in her burden of proving that she has a reasonable necessity for an easement over the plaintiffs' land.

*Coppola v. Dalles*, No. CV054002679S, 2007 WL 2241776, at *6 (Conn. Super. Ct. July 11, 2007) (emphasis added).

¶13. The dissent cites *Alpaugh v. Moore*, 568 So. 2d 291, 295 (Miss. 1990), to support its position that, because the land was bordered by water on three sides, and the Collinses' property on the fourth side, the easement by necessity was "reasonably necessary and practical." However, *Alpaugh* is distinguishable from the facts presented in this case. Although the *Alpaugh* court did not fully develop the facts pertaining to the condition of the land in question, it noted that the Moores used it for a "weekend retreat," implying that the Moores actually resided on the property while on weekend trips. There was also no mention whether the Moores had ever used a boat to access the property. Here, if the Davidsons' land were occupied as a residence or business, access by a motor vehicle might be considered necessary. However, Joseph admitted there were no utilities to the site, and it was not a place

6

suitable for building a home. Joseph also said he likely would not sell the property, explaining: "And the reason is my kids enjoy every weekend down there on that river. I don't know that I would ever get rid of it." It is undisputed that the land in question is accessible on a navigable waterway by boat, and since the use of the property is recreational and generally undesirable for other purposes in its current condition, boat access is suitable for the use of the property. Joseph admitted that he could access the land by boat.

Q. Well – so since 2011, you haven't driven a vehicle down there?

A. No, sir.

Q. Okay, but you walked down there.

A. Yes, sir.

Q. And you can get there by boat?

A. Yes, sir.

. . . .

Q. Okay. How far would you say from this public boat launch to where you got the little pier going, how far would you say that is?

A. Probably 3 – 200 yards.

Q. Nothing to prevent you from going by boat to that sandbar.

A. Correct.

Q. Unless the river was high, you could probably paddle it, couldn't you?

A. You could probably what?

Q. Paddle it. You wouldn't even need a motor.

7

A.     That's right.  That's right.[2]

¶14.    Accordingly, we affirm the county court's finding that no reasonable necessity existed to grant the right-of-way easement across the Collinses' property.

¶15.    **THE JUDGMENT OF THE JACKSON COUNTY SPECIAL COURT OF EMINENT DOMAIN IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, FAIR AND WILSON, JJ., CONCUR.  JAMES, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**JAMES, J., DISSENTING:**

¶16.    I respectfully dissent from the majority's opinion, which relies heavily on persuasive authority.   I would hold that the Davidsons met their burden of proving that a reasonable necessity existed to grant a right-of-way easement across the Collinses' property under Mississippi law.

¶17.    In August 2011, MDOT blocked the previous access route, which the Davidsons used to access the property.  The Davidsons attempted to secure a permit from the State for continued use of their former route, but MDOT denied their request.  The only remaining option of accessing the property would require a right-of-way across the Collinses' property.  Negotiations between the Collinses and Davidsons to obtain a right-of-way also failed.  Landlocked landowners must allege and show that they were unable to obtain a reasonable right-of-way from their surrounding property owners.  *Hooks v. George Cnty.*, 748 So. 2d 678, 681 (¶16) (Miss. 1999).  The Davidsons made the required showing that they were

_____

[2] Dwight testified that when the water was low, one could walk across the river to the sandbar from the boat launch.

8

unable to obtain a reasonable right-of-way from their surrounding neighbors. Consequently, the Davidsons sought to obtain a right-of-way under Mississippi Code Annotated section 65-7-201 (Rev. 2012).

¶18.    "Mississippi statutory law permits a person to petition for a private road across someone else's property 'when necessary for ingress and egress.'" *May v. Adirondack Timber I LLC*, 129 So. 3d 219, 220 (¶1) (Miss. Ct. App. 2013) (citing Miss. Code Ann. § 65-7-201). "The supreme court has interpreted the statute's use of the word 'necessary' to mean what is 'reasonably necessary and practical' and not what is 'absolutely necessary.'" *Id.* at 222 (¶13) (citing *Hooks*, 748 So. 2d at 682 (¶21)). The Davidsons had the burden to prove that the private road across the Collinses' property is "necessary for ingress and egress." *Id.* at 221 (¶9). Although access over the Collinses' property is not absolutely necessary, it certainly is reasonably necessary and practical since the Davidsons' property is surrounded on three sides by water and the remaining side by the Collinses' property. *See Alpaugh v. Moore*, 568 So. 2d 291, 295 (Miss. 1990) (holding that the petitioners' burden was met based on the fact that their property was bound on three sides by water and on the fourth side by the property of the party opposing the easement).

¶19.    The fact that the Davidsons could access their property by boat is not dispositive of the case. The statute requires the Davidsons to "show more than mere convenience of having a private road across the [Collinses'] property[,]" but the Davidsons "did not have to show there was no other possible way to get to [their] property." *May*, 129 So. 3d at 221 (¶7); *see Alpaugh*, 658 So. 2d at 295 (supreme court rejected the argument that the petitioners did not

9

meet their burden of proving "necessity" because they failed to explore the option of building a bridge to their land). I would find that the Davidsons met their burden of proof by showing that they had no other reasonable access to their property in this case.

¶20. The supreme court's decision in *Alpaugh* is instructive. The *Alpaugh* court found that the petitioners' burden of showing a reasonable necessity of a private way across their neighbor's property was met by the fact that the property was bound on three sides by water and on the fourth side by the neighbor's property. *Alpaugh*, 568 So. 2d at 295. The court held: "The [petitioners'] burden of proof concerning necessity [was] met by a showing that they [had] *no other dry access to their land*." *Id*.

¶21. Likewise, the Davidsons have no other *dry access* to their land. I find that their burden was met, and an easement by necessity should have been granted. Therefore, I would reverse and render, granting an easement in favor of the Davidsons, with the only remaining issue of the amount compensation due to the Collinses, to be determined by the special court of eminent domain.