# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01305-COA

**MICHAEL HOBBY AND REGINA LUWANA HOBBY**                    **APPELLANTS**

**v.**

**WANDA OTT AND PEGGY J. PHILLIPS**                    **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2021 |
| TRIAL JUDGE: | HON. TANYA L. HASBROUCK |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | A. SCOTT CUMBEST |
| | ASHLEE E. COLE |
| ATTORNEY FOR APPELLEES: | G. CHARLES BORDIS IV |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND RENDERED - 08/15/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., GREENLEE AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     Wanda Ott and Peggy Phillips filed a complaint against Michael Hobby and Regina Hobby (the Hobbys) seeking an easement by necessity across the Hobbys' properties. The Hobbys contested the easement, arguing that alternative routes existed for Ott and Phillips to access their properties. The George County Chancery Court found that Ott's and Phillips's properties were landlocked, that the path across the Hobby properties was the most convenient and least onerous means of access, and that alternatives would involve disproportionate expenses. The chancery court awarded Ott and Phillips an easement by necessity across the Hobby properties. Aggrieved, the Hobbys appeal. After consideration, we find that the chancery court erred when it granted Ott and Phillips an easement by

necessity without any supporting proof in the record regarding the costs of alternative routes of access. Accordingly, we reverse the judgment of the chancery court and render judgment denying the request for an easement by necessity across the Hobby properties.

**STATEMENT OF THE FACTS**

¶2.     On July 3, 1941, E.B. Taylor received a deed for real property located in George County, Mississippi. The subject property adjoined Plum Bluff Road, which was a public roadway. Taylor later subdivided his interest and partitioned the property into separate parcels. On May 10, 1969, Taylor conveyed a portion of his interest and deeded a parcel of the property to J.R. Hobby and Betty Hobby. Then, on June 1, 1970, through three separate deeds, Taylor conveyed one parcel to Doris Lott, one parcel to Hazel Williams, and one parcel to Jexie Hobby and Betty Hobby.[1] Thereafter, on April 21, 1972, Taylor granted South Mississippi Electric Power Association a right-of-way easement, giving the power company access from the public roadway (Plum Bluff Road) over a 100-foot-wide strip of land across Taylor's property to construct and maintain power lines.[2]

¶3.     Doris Lott subsequently conveyed her parcel to W. Orval Williams and Hazel Williams by a deed dated August 31, 1972. "Betty Hobby, et al." executed a deed on June

---

[1] From the context of the record, it appears that Taylor also conveyed portions of his interest in the property as parcels which at the time of this litigation were now owned by people named Rowdy Fitzgerald, Gerald Rouse, Gary Fairley, and Nena Pinter (or Mary Havard as it appears in the record). The record is unclear as to whether "J.R. Hobby" is the same person as "Jexie Hobby."

[2] A person named Neil G. Fairley signed an agreement on April 21, 1972, granting South Mississippi Electric Power Association a right-of-way easement for a 100-foot-wide strip of land across his property, which the parties allege is property now owned by a person named Rowdy Fitzgerald.

21, 1993, conveying a certain portion of property and interest to Michael Hobby and his wife Regina Hobby. Then on June 17, 1994, "Betty Hobby, et al." executed a second deed conveying their remaining portion of interest in the property to Michael Hobby and his wife Regina Hobby. Hazel Williams died on December 24, 2013, and her interest in the property transferred to W. Orval Williams automatically under the spousal right-of-survivorship. Thereafter, through two separate deeds (both dated May 8, 2014), W. Orval Williams transferred one portion of his interest in the property to his daughter Wanda Ott and the other portion of his interest in the property to his daughter Peggy Phillips. Each of the deeds to Ott and Phillips specifically reserved a life estate in W. Orval Williams, who later died in November 2017. His death extinguished his life estate and effectively transferred all remaining interest to Ott and Phillips, respectively, as remaindermen.

¶4. At the time that their interests vested (upon W. Orval Williams's death), each of the parcels conveyed to Ott and Phillips were landlocked and not accessible from a public road (Plum Bluff Road or otherwise). Ott and Phillips sought access to their properties to hunt and conduct logging activities. They allegedly requested permission for ingress and egress from various neighboring landowners and tried to purchase a right-of-way from Rowdy Fitzgerald. Ott and Phillips were unsuccessful in their alleged attempts.

**PROCEDURAL HISTORY**

¶5. On April 2, 2019, Ott and Phillips (the plaintiffs) filed a "Complaint to Establish Easement and Right of Way" against the Hobbys in the George County Chancery Court. The plaintiffs alleged:

3

The Defendants, MICHAEL HOBBY and REGINA LUWANA HOBBY, are the owners of the real estate which lies between the real estate owned by the Plaintiffs and the public roadway which is known as Plum Bluff Road.

That the only means of ingress and egress to the public road is for the Plaintiffs to cross the real estate owned by the Defendants, MICHAEL HOBBY and REGINA LUWANA HOBBY.

That over many years, a logging road across the real estate owned by Defendants, MICHAEL HOBBY and REGINA LUWANA HOBBY, has been established. That said road allows Plaintiffs ingress and egress to and from the public road; however, Defendants, MICHAEL HOBBY and REGINA LUWANA HOBBY, now refuse to allow the Plaintiffs access to the same.

That the public road (Plum Bluff Road) is the only improved road which the Plaintiffs can use for purposes of ingress and egress and the public road borders the real estate owned by the Defendants, MICHAEL HOBBY and REGINA LUWANA HOBBY.

An easement across the land of the Defendants, MICHAEL HOBBY and REGINA LUWANA HOBBY, is the only convenient and feasible method of affording Plaintiffs access and ingress and egress to the public road. Unless the Plaintiffs are allowed to travel across a small portion of the Defendants' real estate, they have no access from their real estate to the public road. An easement is necessary for the Plaintiffs to be able to access their real estate.

¶6.     The plaintiffs requested in their complaint that the chancery court declare that they are entitled to an easement as a matter of law and grant the plaintiffs an easement of necessity across the real estate owned by the Hobbys for purposes of ingress and egress and to allow the plaintiffs access to the public road. The plaintiffs also sought to have the court enjoin the Hobbys from interfering with the plaintiffs' use of this easement and to further enjoin the Hobbys from setting up any type of obstruction.

¶7.     The Hobbys filed an answer admitting that their parcels of property, Ott's property, and Phillips's property were once owned by a common owner. But the Hobbys stated in their

4

responsive pleading, "Defendants would admit that they own real property which lies between the Plaintiffs' property and Plum Bluff Road. However, Defendants would further state that there are multiple other owners of real property which lies between the Plaintiffs' property and Plum Bluff Road." Essentially, the Hobbys argued "that Ott and Phillips are not entitled to an easement from the Hobbys because the Hobby property is not the sole means of access by which Ott and Phillips can reach Plum Bluff Road."

¶8.     At trial, Ott, Phillips, Michael Hobby, and Regina Hobby testified, and nineteen exhibits were submitted to the court. The exhibits consisted of property deeds, multiple maps and drawings of property lines, and various pictures of the physical appearance of the properties. The plaintiffs also presented testimony from Dillon McInnis, a registered forester. McInnis testified that based on his experience, the powerline easement was not feasible as an access route for Ott and Phillips because the property would be wet and have standing water. During the trial, the parties, their counsel, and the chancellor traveled to and physically examined the properties. The chancellor then entered an order after inspecting the property,

> direct[ing] counsel for each party to . . . provide a . . . brief based on the property inspection as to their contention, if any, as to the most convenient and feasible method of affording [the plaintiffs] access and ingress and egress to a public road, and their contention, if any, whether the property identified at trial as the power line property is a feasible method of providing [the plaintiffs] ingress and egress to a public road.

The plaintiffs submitted a brief contending that the power line easement was not a feasible means of access, and the Hobbys provided a brief contending that the power line easement was feasible.

¶9.     The chancellor determined that "the properties owned respectively by Plaintiffs,

5

Wanda Ott and Peggy J. Phillips, were once part of a commonly owned parcel with property of the Defendants, Michael Hobby and Regina Luwana Hobby," "the Plaintiffs' properties are landlocked, and neither parcel of land is accessible to a public road unless a way of access is brought into existence." Ultimately, the court concluded that "an easement across the Hobbys' triangular parcel of property is the most convenient and least onerous means to access the Ott and Phillips' properties, and other alternatives would involve a disproportion expense or inconvenience[.]" The chancery court therefore granted Ott and Phillips an easement by necessity over the Hobby properties "to run along the established and cleared trail from Plum Bluff Road to the Ott property, and thereafter along the established and cleared trail that runs northerly along the fence line between the Ott property and the 10.01 parcel owned by the Hobbys to the 'pig trail' entrance on the Ott property[.]" But the judgment noted, "However, due to the intent of at least one Plaintiff to engage in logging operations, the Court also finds that the easement should be temporary for a period of one year[.]" The court proceeded to hold that instead, "the Defendants [would be] provided [an] opportunity to provide an alternative permanent easement at their election and expense, and if no alternative easement roadway is provided similar to the size and quality of the then existing temporary easement, then the temporary easement should become permanent."

¶10. The Hobbys appeal from the chancery court's judgment and claim the chancellor erred when she awarded Ott and Phillips an easement by necessity.[3]

---

[3] The Hobbys raise four issues on appeal: (1) whether Ott and Phillips failed to prove necessity of the easement; (2) whether the route created by the temporary easement was the most onerous of all alternative routes available to Ott and Phillips; (3) whether the temporary easement was incapable of being described with a reasonable degree of certainty; and (4)

## STANDARD OF REVIEW

¶11.    "When reviewing a decision of a chancellor, this Court applies a limited abuse of discretion standard of review." *Coast Plaza LLC v. RCH Cap. LLC,* 281 So. 3d 1125, 1132 (¶18) (Miss. Ct. App. 2019). We "will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Hardy v. Hardy,* 241 So. 3d 636, 637-38 (¶5) (Miss. Ct. App. 2018). "However, on issues of law, our standard of review is de novo." *Coast Plaza,* 281 So. 3d at 1132 (¶18).

## DISCUSSION

¶12.    The ultimate question on appeal is whether the chancery court erred by granting Ott and Phillips an easement across the Hobbys' properties. Because Ott and Phillips presented insufficient evidence of the costs of accessing their properties through existing alternative routes, we find that the chancery court abused its discretion when the court awarded Ott and Phillips an easement by necessity.

¶13.    "An easement by necessity arises by implied grant when a part of a commonly[ ]owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing on the lands of another." *Harkness v. Butterworth Hunting Club Inc.*, 58 So. 3d 703, 706 (¶8) (Miss. Ct. App. 2011) (quoting *Broadhead v. Terpening*, 611 So. 2d 949, 953 (Miss. 1992)).

---

whether the Hobbys, owning the servient estate, are allowed to be held solely responsible for the expense of creating and clearing an alternative route suitable for Ott's and Phillips's specific intended use as a roadway for logging operations.

The party "seeking an easement by necessity has the burden of proof and must establish that he [or she] is entitled to a right of way across another's land." *Hardy*, 241 So. 3d at 638 (¶7) (quoting *Davidson v. Collins*, 195 So. 3d 825, 827 (¶11) (Miss. Ct. App. 2015)). "An easement by necessity requires proof that (1) the easement is necessary; (2) the dominant and servient estates were once part of a commonly owned parcel; (3) the implicit right-of-way arose at the time of severance from the common owner." *Id.* "To satisfy this burden, [the plaintiffs] must show . . . that they possess no other means of access to their property." *Id.* (quoting *Haik v. Gammill*, 122 So. 3d 771, 778 (¶26) (Miss. Ct. App. 2013)).

¶14. Here, "[o]ur concern is only whether alternative routes exist. If none exist then the easement will be considered necessary." *Burns v. Haynes*, 913 So. 2d 424, 430 (¶26) (Miss. Ct. App. 2005) (citation omitted) (citing *Fourth Davis Island Land Co. v. Parker*, 469 So. 2d 516, 520 (Miss. 1985)). But "[w]here other alternatives exist, we will grant an easement over the neighboring landowner's property if it is the only reasonably necessary alternative available." *Id.* (citing *Fourth Davis Island Land Co.*, 469 So. 2d at 520). "[T]he necessity should be judged by whether an alternative would involve disproportionate expense and inconvenience, or whether a substitute can be furnished by reasonable labor or expense." *Fourth Davis Island Land Co.*, 469 So. 2d at 521 (citing 28 C.J.S. *Easements* § 33, at 693; 25 Am. Jur. (2d) *Easements and Licenses* § 33, at 446-47). However, "[s]imply stating that it would appear to be 'very expensive' to access property by some other means is not sufficient." *Harkness*, 58 So. 3d at 708 (¶14).[4] "[A]n easement by necessity will *not* be

---

[4] *Cf. Sturdivant v. Todd*, 956 So. 2d 977, 993-94 (¶54) (Miss. Ct. App. 2007) ("While Sturdivant submitted a map showing the longer alternative route, Sturdivant submitted no

awarded when the only evidence presented was that an alternative route would be longer and less convenient." *Id*. at 706-07 (¶10) (emphasis added).[5] In contrast, the decision to affirm the grant of an easement in *Haik*, 122 So. 3d at 778 (¶27), was based upon "the chancellor not[ing] that expert witnesses provided testimony explaining that the cost to build a roadway along the Dedicated Road Easement could cost in the range of $49,000 to over $98,000."

¶15.    The facts of *Harkness* are similar to the instant case. In *Harkness*, a hunting club ("BHC") sought an easement by necessity to access its property by a road that crossed property of the Harknesses. *Harkness*, 58 So. 3d at 705 (¶5). BHC alleged that its property was landlocked and that the only alternative means of access would require BHC to build a new road and cross several deep ravines by building a bridge or culvert, but BHC did not provide testimony as to the estimated cost to cross the ravines. *Id*. at 705-07 (¶¶5, 7, 13). Nevertheless, the chancellor found "that it would be 'very expensive' for BHC" to build a new road and cross the ravines and thus held that BHC was entitled to an easement by necessity. *Id*. at 705 (¶5).

¶16.    On appeal, "[t]he Harknesses argue[d] that the chancellor erred when she awarded BHC an easement by necessity because BHC failed to present evidence regarding the

---

evidence as to the allegedly higher costs of the alternative route such as estimates, bids, or other documentation. The chancellor's implicit rejection of Sturdivant's claim to an easement by necessity was supported by substantial evidence and was not clearly erroneous."), *abrogated in part by Harkness*, 58 So. 3d at 706-07 (¶¶10-12).

    [5] "Where one seeks to obtain a 'way of access' easement by necessity but submits no evidence as to the allegedly higher costs of an alternative route, a trial court will not err in declining to award an easement." *Swenson v. Brouillette*, 163 So. 3d 957, 965 (¶29) (Miss. Ct. App. 2014) (quoting *Harkness*, 58 So. 3d at 708 (¶14)).

expenses involved in accessing BHC's property by some means other than the [r]oad" across the Harknesses' property. *Id*. at 707 (¶13). The appellate court noted that "[i]t was undisputed that BHC had an alternate route to access its land without trespassing across the Harknesses' property, although that means was more inconvenient to BHC, and it would be more expensive than acquiring an easement by necessity from the Harknesses." *Id*. We held

> that the chancellor abused her discretion when she found that BHC had presented sufficient proof of its entitlement to an easement by necessity without presenting any evidence regarding the expenses involved in accessing its property in some manner other than by driving on the Harknesses' property.

The chancery court's order was reversed, and we rendered judgment denying BHC the easement. *Id*. at 708-09 (¶15).

¶17. Here, a review of the record shows that Ott, Phillips, and the Hobbys all acknowledged that Ott's and Phillips's parcels of property were landlocked and did not abut Plum Bluff Road for public access. The record further demonstrates that Ott conceded that a path across the Hobbys' properties was not the only possible means or course of travel for gaining access to Ott's and Phillips's properties. The evidence presented in the course of the trial proceedings showed at least three routes of access from Plum Bluff Road to Ott's and Phillips's properties, and two of those routes involved properties that were also part of the formerly commonly owned tract of E.B. Taylor. Neither of these two routes involved cutting across the Hobby properties.[6] Testimony demonstrated that the first alternative route would

---

[6] Furthermore, the chancery court's final judgment specifically found that "Ott indicated that she tried to purchase a right of way from a different land owner, but he declined. Although there exist other land owners with property between Plum Bluff Road and the Ott and Phillips' properties, Peggy Phillips and Wanda Ott have filed this action only against the Hobbys."

10

require traveling approximately 970 feet from Plum Bluff Road to the southeast corner of Ott's property by traversing along the border of Rowdy Fitzgerald's property line and the eastern border of the Hobbys properties' line. A second alternative route would require traveling approximately 2000 feet from Plum Bluff Road to the southwest corner of Phillips's property following the path of the power line easement.[7] As such, we find it was undisputed that Ott and Phillips had a possible alternative route to access their properties that would not have required utilizing the route across the Hobby properties that the chancellor ultimately chose.

¶18.    Because the record reveals the existence of alternative routes, Ott and Phillips were required to provide evidence regarding the costs of accessing their properties by the alternative routes to prove that they were entitled to an easement by necessity across the Hobby properties. A thorough review of the record shows that Ott and Phillips did not provide any specific evidence of the expenses involved in obtaining access by alternative routes. Moreover, the chancery court's final judgment specifically stated,

> Wanda Ott also testified that it would cost less for a road to be built through the Hobby property, whereas it would cost a lot of money to build a road through another landowner's property. She testified that there was approximately 975 feet of wooded area that she would have to clear and build a road upon if she were required to access Plum Bluff Road through Rowdy Fitzgerald's property. *Ms. Ott testified that she did not get estimates on the cost of building the road through the other landowner's property* because the landowner, Rodney Fitzgerald, refused to sell her a right of way. She asserted

---

[7] The power line easement was also granted at a time when each of the properties that the easement crosses were part of the same tract of land formerly owned by E.B. Taylor. In other words, the power line easement originated from the same commonly owned tract of land as Ott's and Phillips's properties, and, therefore, the costs of this alternative route are relevant to our analysis and holdings.

that the distance to reach the Hobby drive-way using what she calls a pig trail is approximately 200 feet, which clearly would be less expensive than clearing 975 feet of woods.

(Emphasis added). As in *Harkness*, Ott and Phillips presented no evidence regarding the costs of accessing their parcels of property by some means other than by traversing across the Hobbys' properties.[8] We find that the chancery court abused its discretion by granting Ott and Phillips an easement by necessity over the Hobby properties without evidence of the allegedly higher costs of the alternative routes.[9]

## CONCLUSION

¶19. The chancellor abused her discretion when she concluded that Ott and Phillips

---

[8] *See also Burns*, 913 So. 2d at 431 (¶29) ("Burns provided no evidence to show that it would be prohibitively expensive to build a new drive. There was no evidence of costs nor did experts testify. Burns merely asserts that his opinion alone is sufficient to establish a reasonable necessity. . . . [Burns] failed to establish a disproportionate expense in using the alternate routes available to him. Thus, Burns failed to prove that he was entitled to an easement by necessity.").

[9] As noted in *Harkness*, "[i]t bears mentioning that [Ott and Phillips] had the option of employing a different legal mechanism to secure access over [adjoining properties]." *Harkness*, 58 So. 3d at 708-09 (¶15). Mississippi Code Annotated section 65-7-201 (Rev. 2012) provides:

When any person shall desire to have a private road laid out through the land of another, when necessary for ingress and egress, he shall apply by petition, stating the facts and reasons, to the special court of eminent domain created under Section 11-27-3 of the county where the land or part of it is located, and the case shall proceed as nearly as possible as provided in Title 11, Chapter 27 for the condemnation of private property for public use. The court sitting without a jury shall determine the reasonableness of the application. The owner of the property shall be a necessary party to the proceedings. If the court finds in favor of the petitioner, all damages that the jury determines the landowner should be compensated for shall be assessed against and shall be paid by the person applying for the private road, and he shall pay all the costs and expenses incurred in the proceedings.

12

presented sufficient proof that they were entitled to an easement by necessity without presenting any evidence regarding the expenses involved in accessing their properties in some manner other than by traversing across the Hobby properties. Accordingly, we reverse the chancery court's judgment and render judgment denying Ott's and Phillips's request for an easement of necessity across the Hobby properties.

¶20.    **REVERSED AND RENDERED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**